**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**EDWING D. DANIEL,**
**WILLIAM COTTRILL,**
**BROOKE PADGETT,**
**MICHAEL FANELLA,**
**JAMES MORGAN,**
**ELAINE LAREINA,**

          **Plaintiffs,**               **CASE NO.: 8:17-cv-02503-SCB-JSS**

**v.**

**NAVIENT SOLUTIONS, LLC,**           **JURY TRIAL DEMANDED**

          **Defendant.**
_____/

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs, Edwing D. Daniel, William Cottrill, Brooke Padgett, Michael Fanella, James Morgan, and Elaine Lareina, by and through the undersigned attorneys, hereby files this First Amended Class Action Complaint against Defendant Navient Solutions, LLC, and states as follows:

## PRELIMINARY STATEMENT

1.    This is an action against Navient Solutions, LLC for negligence, breach of fiduciary duty, unjust enrichment, breach of implied-in-law contract, violation of the Florida Consumer Collection Practices Act, the Illinois Consumer Fraud and Deceptive Practices Act, the D.C. Consumer Protection Procedures Act, and the Colorado Consumer Protection Act.

2.    Beginning in 2007, many thousands of individuals chose to serve their communities and their country because the Public Service Loan Forgiveness program would allow those people to later have their student loans forgiven.

1

3.      For years, Navient Solutions, LLC has told its customers that they were eligible to have their loans forgiven after 120 payments, despite knowing that those individuals did not have eligible loans.

4.      Plaintiffs seek damages, costs and attorney's fees from Navient Solutions, LLC for the above violations.

5.      Per discussion and agreement with Defendant's counsel, this complaint effectively consolidates this case with *Cottrill v. Navient Solutions, LLC*, 4:17-cv-10082-JEM, which is currently pending in the Southern District of Florida, Key West Division.  After the filing of this complaint, *Cottrill v. Navient Solutions, LLC*, will be dismissed without prejudice.

6.      Further, this complaint adds additional plaintiffs and additional causes of action, as set forth below.

## JURISDICTION AND VENUE

7.      Federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.  Supplemental jurisdiction exists over the state law claims pursuant to 28 U.S.C. § 1367.

8.      Federal jurisdiction exists pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act ("CAFA"), as the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs, and is a class action in which a member of the class of plaintiffs is a citizen of a state different from Defendant.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims and injuries occurred in the Middle District of Florida.

2

## PARTIES

10.     Plaintiff, Edwing D. Daniel, Ph.D. ("Dr. Daniel") is a natural person who resides in Hillsborough County, Florida.

11.     Plaintiff William Cottrill ("Cottrill"), is a natural person who resides in Monroe County, Florida.

12.     Plaintiff Brooke Padgett ("Padgett"), is a natural person who resides in Hillsborough County, Florida.

13.     Plaintiff Michael Fanella ("Fanella"), is a natural person who resides in Cook County, Illinois.

14.     Plaintiff James Morgan ("Morgan"), is a natural person who resides in Washington, D.C.

15.     Plaintiff Elaine Lareina ("Lareina"), is a natural person who resides in Denver, Colorado.

16.     Plaintiffs Daniel, Cottrill, Padgett, Fanella, Morgan, and Lareina shall be referred to collectively as "Plaintiffs."

17.     Defendant, Navient Solutions, LLC, also known as "Navient" ("Defendant" or "Navient"), formerly known as Sallie Mae, a Delaware corporation, is headquartered in Delaware, does business in the State of Florida, and is a "person" under Section 559.72, Florida Statutes, and a "debt collector" under 15 U.S.C. § 1692a(6).

18.     Defendant's actions set forth below are wholly without excuse.

19.     At all times mentioned herein, the agent(s) or employee(s) of Defendant were acting within the course and scope of such agency or employment and were acting with the consent, permission, and authorization of Defendant.

## CLASS ACTION ALLEGATIONS

20.     Plaintiffs bring this action as a class action, pursuant to Federal Rule of Civil Procedure 23, on their own behalf and on behalf of all other similarly-situated student loan borrowers in the United States who are or were employed full-time by a government or a nonprofit corporation that is a qualifying organization for purposes of the Public Service Loan Forgiveness Program, and who within four years of the filing of this Complaint, had student loans serviced by Navient that were in repayment status (the "Class").

21.     Plaintiffs Daniel, Cottrill, and Padgett bring Count V of this action for violation of the Florida Consumer Collection Practices Act as a class action on behalf of all other similarly-situated student loan borrowers in the State of Florida who are or were employed full-time by a government or a nonprofit corporation that is a qualifying organization for purposes of the Public Service Loan Forgiveness Program, and who within four years of the filing of this Complaint, had student loans serviced by Navient that were in repayment status (the "Florida Subclass").

22.     Plaintiff Fanella brings Count VI of this action for violation of the Illinois Consumer Fraud and Deceptive Practices Act as a class action on behalf of all other similarly-situated student loan borrowers in the State of Illinois who are or were employed full-time by a government or a nonprofit corporation that is a qualifying organization for purposes of the Public Service Loan Forgiveness Program, and who within four years of the filing of this Complaint, had student loans serviced by Navient that were in repayment status (the "Illinois Subclass").

23.     Plaintiff Morgan brings Count VII of this action for violation of the D.C. Consumer Protection Procedures Act as a class action on behalf of all other similarly-situated student loan borrowers in Washington, D.C. who are or were employed full-time by a

government or a nonprofit corporation that is a qualifying organization for purposes of the Public Service Loan Forgiveness Program, and who within four years of the filing of this Complaint, had student loans serviced by Navient that were in repayment status (the "D.C. Subclass").

24.     Plaintiff Lareina brings Count VIII of this action for violation of the Colorado Consumer Protection Act as a class action on behalf of all other similarly-situated student loan borrowers in the State of Colorado who are or were employed full-time by a government or a nonprofit corporation that is a qualifying organization for purposes of the Public Service Loan Forgiveness Program, and who within four years of the filing of this Complaint, had student loans serviced by Navient that were in repayment status (the "Colorado Subclass").

### *Numerosity*

25.     The class is so numerous that joinder of all members is impracticable.  Plaintiffs estimate the Class has approximately 600,000 members.  Further, Plaintiffs estimate that each Subclass will contain thousands of members.

### *Commonality*

26.     There are questions of law and fact that are common to the Class and which predominate over questions affecting any individual Class member. Specifically, these common questions of law and fact include, without limitation, (1) whether Defendant is liable for negligence; (2) whether Defendant is liable for breach of fiduciary duty; (3) whether Defendant is liable for unjust enrichment; (4) whether Defendant is liable for breach of implied-in-law contract; (5) as to the Florida Subclass, whether Defendant violated the Florida Consumer Collection Practices Act ("FCCPA"); (6) as to the Illinois Subclass, whether Defendant violated the Illinois Consumer Fraud and Deceptive Practices Act; (7) as to the D.C. Subclass, whether

Defendant violated the D.C. Consumer Protection Procedures Act; and (8) as to the Colorado

Subclass, whether Defendant violated the Colorado Consumer Protection Act.

### Typicality

27.     Plaintiff's claims are typical of the claims of the Class, and Plaintiffs have no

interest adverse or antagonistic to the interests of other members of the Class.

### Adequacy of Class Representation

28.     Plaintiffs will fairly and adequately protect the interests of the Class and has

retained experienced counsel, competent in the prosecution of class action litigation.

### Predominance of Common Questions

29.     The common questions set forth in Paragraph 26 predominate over any individual

issues.

### Superiority of Class Resolution

30.     A class action is superior to other methods for the fair and efficient adjudication

of the claims asserted herein.  Plaintiffs anticipate that no unusual difficulties are likely to be

encountered in the management of the class action.

31.     A class action will permit a large number of similarly-situated persons to

prosecute their common claims in a single forum simultaneously, efficiently, and without the

duplication of effort and expense that numerous individual actions would engender.

32.     Class treatment will also permit the adjudication of relatively small claims by

many Class members who could not otherwise afford to seek legal redress for Defendant's

conduct.

33.     Absent a class action, the Class members will continue to have their rights

violated and will continue to suffer monetary damages.

34.     Defendant's actions are generally applicable to the entire Class and accordingly, the relief sought is appropriate with respect to the entire Class.

## FACTUAL ALLEGATIONS

35.     Navient (formerly known as Sallie Mae, Inc.) is the largest student loan servicer in the United States. Navient services the loans of more than 12 million borrowers, including over 6 million customer accounts under a contract with the U.S. Department of Education, and more than $300 billion in federal and private student loans.

36.     Navient's principal responsibilities as a student loan servicer include managing borrowers' accounts; processing monthly payments; assisting borrowers to learn about, enroll in, and remain in alternative repayment plans; and communicating directly with borrowers about the repayment of their loans.

37.     Navient owes a duty to its customers to provide accurate information. The U.S. Department of Education has publicly encouraged borrowers to consult their federal student loan servicers to determine the best repayment option or alternative for that individual borrower. In several places on its website, the U.S. Department of Education has advised borrowers to contact their student loan servicers before applying for any alternative repayment plan or forbearance, with statements such as the following: "Work with your loan servicer to choose a federal student loan repayment plan that's best for you"[1]; "Your loan servicer will help you decide whether one of these plans is right for you"[2]; and "Always contact your loan servicer immediately if you are having trouble making your student loan payment."[3]; "Why pay for help with your federal

---

[1] Federal Student Aid, U.S. Department of Education, *Repayment Plans*, https://studentaid.ed.gov/sa/repay-loans/understand/plans (last visited Aug. 15, 2017).
[2] Federal Student Aid, U.S. Department of Education, *Income-Driven Repayment Plans*, https://studentaid.ed.gov/sa/repay-loans/understand/plans/income-driven (last visited Aug. 15, 2017).
[3] Federal Student Aid, U.S. Department of Education, *Deferment and Forbearance*, https://studentaid.ed.gov/sa/repay-loans/deferment-forbearance (last visited Aug. 15, 2017).

7

student loans when your loan servicer will help you for FREE?  Contact your servicer to apply for income-driven repayment plans, student loan forgiveness, and more."[4]

38.    Further, Navient holds itself out as a resource for individuals to use to determine the most financially-beneficial path to student loan repayment.

39.    For example, Navient's website represents that Navient's "Philosophy" is "to enhance the financial success of our customers by delivering innovative solutions and insights with compassion and personalized service."[5]

40.    Navient itself recognizes how complex the student loan system is for borrowers to navigate.  On July 13, 2015, Navient told the Consumer Financial Protection Bureau that "We service loans made under an increasingly complex student loan program. Since 1990, the number of repayment options available to borrowers has increased from two to 15—including multiple income driven repayment plans with similar sounding names and differing eligibility criteria. There are now eight forgiveness programs and over 35 different deferment and forbearance options. **This complexity can be overwhelming to some borrowers**."[6]

41.    Plaintiffs placed trust in Navient to determine the best path for repayment and Navient accepted and invited that trust.

42.    In 2007, the United States Department of Education promulgated the Public Service Loan Forgiveness program ("PSLF") to encourage participation in public service.  Many public service fields traditionally offer lower wages than their private-sector counterparts. Individuals with average student loan debt and entry-level salaries in these fields are likely to face financial hardship when repaying their student loans.

---

[4] Federal Student Aid, U.S. Department of Education, *Public Service Loan Forgiveness*,
https://studentaid.ed.gov/sa/repay-loans/forgiveness-cancellation/public-service (last visited Aug. 15, 2017)
[5] Navient, *Our Philosophy*, https://navient.com/about/who-we-are/philosophy/ (last visited Aug. 15, 2017).
[6] See Navient Response to CFPB RFI, Docket No. CFPB-2015-0021 (July 13, 2015) (emphasis added).

43.     The PSLF was created to protect public service workers against the prospect of this financial hardship and provide a pathway to satisfy their student loan obligation over a set period of time—ten years.

44.     Recent data released by the Department of Education show that low-to-moderate income student loan borrowers comprise the largest share of borrowers expected to benefit from PSLF.[7]   As of 2016, nearly two thirds (62 percent) of borrowers who have certified intent to pursue PSLF reported earning less than $ 50,000 per year.[8] The vast majority of borrowers (86 percent) earned less than $75,000 per year.[9]

45.     To be eligible for the PSLF program, borrowers must meet four basic requirements:

- The borrower must have one or more Direct Loans.

- The borrower must make 120 qualifying payments.

- The borrower must be enrolled in a qualifying, which are limited to the 10 year standard repayment plan or any of the Income Driven Plans .

- The borrower must work full-time for a qualified employer.

46.     After meeting the above requirements, borrowers can have the outstanding balance of their loans forgiven.  This is a significant benefit that makes public service possible for many individuals who otherwise could not afford to take a public-sector job.

47.     Only loans made under the William D. Ford Direct Loan Program ("Direct Loans") are eligible to be forgiven under the PSLF.   Direct Loans are loans on which the federal

[7] *See* U.S. Dept. of Education, Direct Loan Public Service Loan Forgiveness (July 2016),
http://fsaconferences.ed.gov/conferences/library/2016/NASFAA/2016NASFAADirectLoanPSLF.pdf
[8] See U.S. Dept. of Education, 2016 FSA Training Conference for Financial Aid Professionals (Nov. 2016),
http://fsaconferences.ed.gov/conferences/library/2016/2016FSAConfSession18.ppt
[9] *Id.*

9

government is the lender. Previously, the government would act only as a guarantor of loans funded by private lenders.

48.     Borrowers with other types of federal loans, such as Federal Family Education Loan Program (FFELP) Loans or Perkins Loans, are not eligible for PSLF. Student loan borrowers may consolidate these loans into a Direct Consolidation Loan in order to become eligible, but payments made prior to the consolidation do not qualify towards the PSLF forgiveness.

49.     Navient's customer service representatives were entrusted by both the federal government and the borrowers themselves to help borrowers pay the least amount they are required to pay the satisfy their student loan obligations.

50.     But instead of helping borrowers by giving them correct information, Navient customer service representatives routinely gave incorrect information to borrowers who inquired as to their eligibility for the PSLF program.

**Dr. Edwing Daniel – Assistant Dean of MD Admissions at USF Medical School**

51.     Dr. Daniel is one such consumer. Dr. Daniel has been employed by the University of South Florida since 2011. He is currently the Assistant Dean of MD Admissions and Scholarships for the University of South Florida Morsani College of Medicine.

52.     Dr. Daniel had several conversations with Navient representatives regarding his eligibility under the PSLF program. In one such conversation in approximately November 2011, Dr. Daniel telephoned Navient [then doing business as Sallie Mae] and inquired to determine whether he was on track to be eligible for the PSLF.

53.     The Navient customer service representative informed Dr. Daniel that he would indeed be eligible to receive the PSLF benefit. The representative told Dr. Daniel that to qualify

he only needed to make consecutive payments, could not make any late payments, and could not defer any payments. The representative told him that if he was late on a payment, the "clock" would reset on the PSLF program for Dr. Daniel. However, all of the statements made by the Navient representative were false.

56.     The representative made no mention of Dr. Daniel needing to be in a specific loan program or have a particular type of loan to be eligible.

57.     However, Dr. Daniel would never have actually been eligible because he did not have a Direct Loan.

58.     Dr. Daniel had been paying approximately $1,000 per month with the expectation that the outstanding balance of his loans would be forgiven under PSLF. Had Navient given Dr. Daniel correct information, Dr. Daniel could have addressed the situation to make sure he was eligible for that forgiveness. Instead, not a single payment he has made has counted towards PSLF and Dr. Daniel will not be eligible to receive loan forgiveness for another ten years.

**William Cottrill – Meteorologist for the National Weather Service**

59.     Mr. Cottrill has been employed as a meteorologist by the National Weather Service since 2007.

60.     In approximately 2011, Mr. Cottrill telephoned Navient [then doing business as Sallie Mae] and inquired to determine whether he was on track to be eligible for the PSLF.

61.     The Navient customer service representative informed Mr. Cottrill that he would indeed be eligible to receive the PSLF benefit. The representative told Mr. Cottrill that he only needed to complete an application once he made 120 payments.

62.     The representative made no mention of Mr. Cottrill needing to be in a specific loan program or have a particular type of loan to be eligible.

63.     However, Mr. Cottrill would never have actually been eligible because he did not have a Direct Loan.

64.     Mr. Cottrill had been paying $1,100 per month for more than 8 years with the expectation that the outstanding balance of his loans would be forgiven under PSLF.  Had Navient given Mr. Cottrill correct, information, Mr. Cottrill could have addressed the situation to make sure he was eligible for that forgiveness.

65.     Mr. Cottrill was ready for retirement and counted on the PSLF program to eliminate his loan payment so he could retire.  Instead, not a single payment he has made has counted towards PSLF and Mr. Cottrill will not be eligible to receive loan forgiveness for another ten years, despite his long history of public service

**Brooke Padgett – Assistant State Attorney**

66.     Ms. Padgett has been a state prosecutor since 2010 and has worked in the Fourth, Fifth, and Thirteenth Judicial Circuits in Florida.

67.     Payments on Ms. Padgett's student loans with Navient first became due in 2010.

68.     Ms. Padgett contacted Navient in approximately December 2010 to discuss her loan payments.  Ms. Padgett's income was low enough to qualify her for a student loan payment of $0.  Ms. Padgett informed Navient that she was participating in the PSLF program and asked whether a $0 payment on her loans would qualify for the PSLF program.

69.     A Navient representative assured Ms. Padgett that a $0 payment counted towards PSLF and assured Ms. Padgett that she was still on track in the PSLF program.

70.     Later, in approximately 2013-2014, after an error in paperwork led to a higher payment, a Navient representative instructed Ms. Padgett that she should defer her loan payments until the error was resolved.

71.     Ms. Padgett again explained that she was participating in PSLF and specifically asked the Navient representative whether deferring her loan payments would have any effect on her PSLF status.

72.     The representative assured Ms. Padgett that a deferral would not have any impact on Ms. Padgett's eligibility for PSLF.

73.     In 2017, Ms. Padgett took a new job as an Assistant State Attorney in Hillsborough County, Florida.  The change involved a pay cut, so in August 2017 Ms. Padgett again contacted Navient about what her new loan payments would be in the new position.

74.     During that call, Ms. Padgett mentioned that she was keeping her public service job in order to continue qualifying for PSLF.

75.     This time, the Navient representative told her that none of her student loans qualified for PSLF because they were not Direct Loans.

76.     Shocked, Ms. Padgett questioned the representative about why she had previously been told by Navient that her loans qualified only to now be told the opposite.  The Navient representative had no response.

77.     Several days later, Ms. Padgett contacted Navient again and questioned whether Navient records or notes of phone conversations to verify that she had been previously told that she was eligible for PSLF.  The Navient representative refused to disclose the existence of such information.

**Michael Fanella – Public Defender**

78.     Michael Fanella has been a Public Defender in Cook County, Illinois for more than 25 years.

79.     Fanella estimates that he has paid more than $100,000 in interest on his student loans, while still owing a balance of approximately $85,000.

80.     The pay for public defenders is notoriously low and Fanella viewed the PSLF program as a Godsend.

81.     Navient (then Sallie Mae) serviced Fanella's student loans.

82.     Since the PSLF program went into effect, Fanella has called Navient numerous times to verify that his loans were, in fact eligible for forgiveness.  Each time, Fanella was told, without exception, that his loans were eligible for forgiveness so long as he made 120 payments.

83.     Based on those conversations, Fanella expected all his loans to be forgiven in October 2017.

84.     Instead, Navient's representations were false—Fanella's FFELP loans were never eligible for PSLF.  And, despite numerous opportunities to do so, no Navient representative ever told Fanella he needed to consolidate his loans into Direct Loans to be eligible for PSLF.

85.     After learning of Navient's misrepresentations and failures to inform Fanella that he would not be eligible for PSLF, Fanella again telephoned Navient to complain about their actions.

86.     Navient assigned a so-called "Consumer Advocate" to Fanella, Kelly Shefler.  Ms. Sheffler lied on Navient's behalf in documents filed with the Consumer Financial Protection Bureau in response to Fanella's complaint.

87.     For instance, Ms. Sheffler refused to acknowledge the existence of calls regarding PSLF from Fanella dating back to 2009 – even though another Navient employee verified the existence of those calls.

88.     Instead, Ms. Sheffler falsely asserted (in writing) that Fanella's first call to Navient was in January 2015 and lied about the contents of that call, falsely stating that Fanella had only recently become aware of the PSLF program.  In fact, Mr. Fanella, who counted desperately on loan forgiveness, had been following PSLF closely since its inception.

89.     When confronted with her lies, Ms. Sheffler acknowledged that she was not referring to any documents when asserting the 2009 call didn't exist.

90.     Mr. Fanella requested all records of all his communications with Navient. Navient refused to provide them.

**James Morgan – United States Department of Treasury**

91.     James Morgan resides in Washington, D.C.  Since 2010, Mr. Morgan has been employed by the federal government as a tax law specialist and making payments on his student loans.

92.     Mr. Morgan currently owes over $400,000 in student loans, which are serviced by Navient.

93.     While Navient was servicing Mr. Morgan's loans, Mr. Morgan called Navient repeatedly to ensure that he was on track for PSLF.  He was told repeatedly that he was on track and would have his loans forgiven after 120 payments.

94.     Mr. Morgan had previously been told his loans would be forgiven in 2020.  In 2017, Mr. Morgan logged into Navient's website and saw this his loan maturation date had changed to 2023.

95.     Mr. Morgan then called Navient and was informed that Navient hired a third-party contractor to determine payment eligibility.  Despite Navient's prior representations that Mr. Morgan was on track to receive PSLF forgiveness, that company had determined that several

years of Mr. Morgan's payments were deemed ineligible.  But Navient was unable to explain

why or provide any documentation supporting that finding.

**Elaine Lareina – United States Environmental Protection Agency**

96.     Ms. Elaine Lareina graduated in 2004.  When PSLF was created in 2007, Ms.

Lareina called Navient (then Sallie Mae) to see if she qualified.

97.     Ms. Lareina was told that all she had to do to qualify was make 120 consecutive

payments.  Since that initial phone call, Ms. Lareina was told at least twice that she was eligible

to have her loans forgiven if she continued making payments.

98.     In 2013, Ms. Lareina was considering taking a sabbatical from work and inquired

into putting her student loans in deferred payment status.

99.     Ms. Lareina contacted Navient to inquire as to whether putting her loans in

deferment would count against her PSLF eligibility.  She was instructed by Navient that if she

put her loans in deferment, it would count against her PSLF eligibility.  Ms. Lareina therefore

did not put her loans in deferment.

100.    In 2017, after making nearly all the required payments and believing her loans

were about to be forgiven, Ms. Lareina again contacted Navient to again ensure she was eligible

for PSLF.

101.    This time, however, she was told for the first time that none of her payments

qualified because they were consolidated using the wrong loan product.  The Navient

representative told her that she would need to reconsolidate using the correct type of loan and

make another 10 years worth of payments.

102.    Ms. Lareina should be celebrating having her student loans forgiven, but instead,

despite making 10 years worth of payments, Ms. Lareina has to start all over again.

16

**Other Student Loan Borrowers**

103.    Plaintiffs are not the only people in this situation.   The Consumer Financial Protection Bureau ("CFPB") reviewed a sample of 8,494 federal student loan servicing complaints between March 1, 2016, and February 28, 2017, and analyzed the nature of the complaints.

104.    The CFPB found that, of that sample, 10% of all student loan servicing complaints related to the Public Service Loan Forgiveness Program.

105.    Further, of the 8,494 borrowers sampled, 54% (or 4,638) were complaining about Navient.

106.    In its report, "Staying on track while giving back" (June 2017), the CFPB examined issues that formed the basis of complaints about the PSLF.  The first issue highlighted is that "**Borrowers report spending years making payments, believing they were making progress towards PSLF, before servicers explain that their loans do not qualify for PSLF**." P. 29 (emphasis in original).

107.    For example, in the CFPB report, the CFPB includes an e-mail from one person stating:

> I started working for a public school and learned about the loan forgiveness program. I called [my servicer] to consolidate my loans to qualify for loan forgiveness. They said that their income based loan would qualify me for the loan forgiveness program. I consolidated my loans, and AGAIN asked "does this qualify me for loan forgiveness program?" They told me, "I was all set!" They also stated that there was no form to submit for loan forgiveness until I completed 120 payments over 10 years so I did not follow up sooner. Recently, I called to check in around this, and was informed that I WAS NOT in the loan forgiveness program, and that I needed to consolidate my loans [into a Direct Loan]. . . I have been paying for 4 years and was misled by this company completely . . . Now I have consolidated my loans [into a] a direct loan, and have ONE payment toward my 10 years."

17

108.    Due to Navient's conduct, Borrowers like Plaintiffs have lost years of payments that could have gone towards qualifying for the PSLF.

109.    Plaintiffs, and others in their situation, are damaged by Navient's actions.  Among other things, Plaintiffs must now make all of the payments that otherwise would have been forgiven had Navient provided correct information.  Those payments include interest, principal, and fees.  Navient is paid servicing fees out of loan payments made by Plaintiffs.

110.    Navient and its customer service representatives had incentives to put their own interests ahead of consumers.  First, if Navient customers had their loans forgiven under the PSLF, Navient would lose the right to service their loans.

111.    Further, Navient has benefited from the extra principal, fees, and interest it would not have otherwise collected had borrowers been given correct information and been given the opportunity to make their loans eligible for the PSLF.

112.    Moreover, student loan servicers, including Navient, are contracted to and compensated for helping consumers navigate the process of qualifying for PSLF. Lenders or loan holders, including the Department of Education, generally contract with private companies to administer all aspects of federal student loan repayment, including answering borrowers' questions about the repayment of federal student loans and about available loan forgiveness programs. Additionally, borrowers who express interest in PSLF rely on their servicers to have the necessary information to help them stay on track with their repayment plans.

113.    However, instead of using that compensation to create policies and procedures that benefit borrowers, Navient used it to reap profits at the expense of those same borrowers.

114.    Navient has compensated its customer service personnel, in part, based on average call time. As a result, engaging in lengthy and detailed conversations with borrowers about their

18

particular financial situations and trying to determine the repayment situation plan that is most appropriate for each borrower would have been financially detrimental for those employees.

115.    Defendant's actions were the result of either intentional misconduct or gross negligence motivated solely by financial gain and the unreasonably dangerous nature of the conduct, together with the high likelihood of injury resulting from that conduct, was actually known by individuals making policy decisions on behalf of Defendant.

116.    Further, the actions of Defendant described above constitute unfair, deceptive, and/or abusive acts in violation of Title X of the Dodd-Frank Act, 12 U.S.C. § 5531.

117.    All conditions precedent to this action have occurred, have been satisfied or have been waived.

## COUNT I

## BREACH OF FIDUCIARY DUTY

118.    This is an action against Navient for breach of fiduciary duty.

119.    Plaintiffs re-allege and incorporate paragraphs 1 through 117, as if fully set forth herein.

120.    Navient has a fiduciary duty to its customers to provide accurate information regarding loan options.

121.    By repeatedly giving customers false information regarding the status of their eligibility for the Public Service Loan Forgiveness Program, Navient breached that duty.

122.    That breach has led to damages, including payment of amounts that Plaintiffs would not have been responsible for had Navient provided accurate information to customers about their loans.

WHEREFORE, Plaintiffs respectfully requests that the Court enter judgment in Plaintiff's favor as to Count I, awarding damages, plus pre-judgment and post-judgment interest,

and punitive damages, and awarding all such further relief as the Court deems necessary and proper.

## COUNT II

## NEGLIGENCE

123.    This is an action against Navient for negligence.

124.    Plaintiffs re-allege and incorporate paragraphs 1 through 117, as if fully set forth herein.

125.    Navient has a duty to its customers to provide accurate information regarding loan options.

126.    By repeatedly giving customers false information regarding the status of their eligibility for the Public Service Loan Forgiveness Program, Navient breached that duty.

127.    That breach has led to damages, including payment of amounts that Plaintiffs would not have been responsible for had Navient provided accurate information to customers about their loans.

WHEREFORE, Plaintiffs respectfully requests that the Court enter judgment in Plaintiff's favor as to Count I, awarding damages, plus pre-judgment and post-judgment interest, and punitive damages, and awarding all such further relief as the Court deems necessary and proper.

## COUNT III

## UNJUST ENRICHMENT

128.    This is an action against Navient for unjust enrichment and is plead in the alternative if no other remedy at law is found to exist.

129.    Plaintiffs re-alleges and incorporate paragraphs 1 through 117, as if fully set forth herein.

130.    As detailed above, Plaintiffs have conferred a benefit upon Navient, specifically the principal, interest, and fees Navient earns from servicing Plaintiff's student loans to which it would not otherwise have been entitled.

131.    Navient has actual knowledge of such benefit, voluntarily accepted and retained the benefit.

132.    Under the circumstances set forth above, it would be unequitable for Navient to retain the benefit of loan servicing fees that Plaintiffs would not have had to pay had Navient provided truthful and accurate information to Plaintiffs and others similarly-situated.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in Plaintiff's favor as to Count III, awarding damages, plus pre-judgment and post-judgment interest, and punitive damages, and awarding all such further relief as the Court deems necessary and proper.

## COUNT IV

## BREACH OF IMPLIED-IN-LAW CONTRACT

133.    This is an action against Navient for breach of implied in law contract and is plead in the alternative if no other remedy at law is found to exist.

134.    Plaintiffs re-alleges and incorporate paragraphs 1 through 117, as if fully set forth herein.

135.    As detailed above, Plaintiffs have conferred a benefit upon Navient, specifically the principal, interest, and fees Navient earns from servicing Plaintiffs' student loans to which it would not otherwise have been entitled.

136.    Navient has actual knowledge of such benefit, voluntarily accepted and retained the benefit.

137.    Under the circumstances set forth above, it would be unequitable for Navient to retain the benefit of loan servicing fees that Plaintiffs would not have had to pay had Navient provided truthful and accurate information to Plaintiffs and others similarly-situated.

WHEREFORE, Plaintiffs respectfully requests that the Court enter judgment in Plaintiff's favor as to Count IV, awarding damages, plus pre-judgment and post-judgment interest, and punitive damages, and awarding all such further relief as the Court deems necessary and proper.

## COUNT V

## VIOLATION OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT

138.    This is an action against Navient on behalf of Daniel, Cottrill, Padgett, and the Florida Subclass for violation of the Florida Consumer Collection Practices Act ("FCCPA").

139.    Plaintiffs re-allege and incorporate paragraphs 1 through 117, as fully set forth herein.

140.    Defendant communicated certain information to Plaintiffs as set forth above, which constitutes "communication," as defined by § 559.55(5), Fla. Stat.

141.    Section 559.72, Fla. Stat., provides, in pertinent part:

In collecting consumer debts, no person shall:

(9)  Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

142.    Pursuant to Section 559.552, Fla. Stat., the FCCPA is in addition to the requirements of the federal FDCPA, which prohibits false representations regarding the character

22

or legal status of a debt, and also forbids the use of any false representation or deceptive means to attempt to collect a debt.  15 U.S.C. § 1692e(2),(10).

143.    As detailed above, Defendant has misrepresented the character and legal status of student loan debt, and used false representations to collect that debt, which are the assertion of rights that do not exist, as contemplated by the FDCPA, and in doing so has violated Section 559.72(9), Florida Statutes.

144.    Further, by committing unfair, deceptive, and/or abusive acts in violation of Title X of the Dodd-Frank Act, 12 U.S.C. § 5531, Defendant also asserted the right to violate the Dodd-Frank Act, which is a right that does not exist and by doing so has also violated Section 559.72(9), Florida Statutes.

145.    Pursuant to § 559.77(2), Fla. Stat., as a result of the above violations of the FCCPA, Navient is liable for actual damages, statutory damages, and reasonable attorney's fees and costs.

146.    Based upon the willful, intentional, knowing, malicious, repetitive and continuous conduct of Defendant as described herein, Plaintiff is entitled to an award of punitive damages in accordance with §§ 559.77 and 768.72, Fla. Stat.

147.    Each communication, made in violation of the FCCPA is a separate justiciable issue entitled to adjudication on its individual merits and is eligible for an award of damages. Pursuant to Federal Rule of Civil Procedure 10(b), each violation has been consolidated into a single count to promote clarity.

WHEREFORE, Plaintiffs Daniel, Cottrill, and Padgett, on behalf of themselves and the Florida Subclass, respectfully requests this Court enter a judgment against Defendant, finding that Defendant violated the FCCPA, awarding actual damages, statutory damages, punitive

damages, attorneys' fees and costs pursuant to § 559.77(2), Fla. Stat., and awarding any and all such further relief as is deemed necessary and appropriate.

## COUNT VI

### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT

148.    This is an action against Navient on behalf of Fanella and the Illinois Subclass for violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 501 *et seq*.

149.    Plaintiff re-alleges and incorporates paragraphs 1 through 117, as fully set forth herein.

150.    Section 2 of the Illinois Consumer Fraud and Deceptive Practices Act states, in pertinent part,

**§ 2. Unlawful practices; construction with Federal Trade Commission Act**

"Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965,[1] in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." 815 ILCS 505/2

151.    As detailed above, while engaged in trade or commerce, Navient committed unfair and deceptive acts or practices against Fanella, with the intent that consumers rely on such acts or practices declared unlawful under the statute set forth above.

24

152.   Plaintiff Fanella and members of the Illinois Subclass have been damaged by Navient's conduct, including by paying additional interest and principal on loans that otherwise would have been forgiven under the PSLF program.

WHEREFORE, Plaintiff Fanella, on behalf of himself and the Illinois Subclass, respectfully requests this Court enter a judgment against Defendant, finding that Defendant violated the Illinois Consumer Fraud and Deceptive Practices Act, awarding actual damages, punitive damages, attorneys' fees and costs pursuant to 815 ILCS 501 *et seq*., and awarding any and all such further relief as is deemed necessary and appropriate.

## COUNT VII

## VIOLATION OF THE D.C. CONSUMER PROTECTION PROCEDURES ACT

153.   This is an action against Navient on behalf of Morgan and the D.C. Subclass for violation of the D.C. Consumer Protection Procedures Act (the "D.C.C.P.P.A."), D.C. Code Ann. § 28-3901 *et seq*.

154.   Plaintiff re-alleges and incorporates paragraphs 1 through 117, as fully set forth herein.

155.   Pursuant to the D.C.C.P.P.A., in pertinent part, "It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:

(e) misrepresent as to a material fact which has a tendency to mislead;

(e-1) Represent that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

(f) fail to state a material fact if such failure tends to mislead;"

(u) represent that the subject of a transaction has been supplied in accordance with a previous representation when it has not;

25

156.    As detailed above, while engaged in trade or commerce, Navient violated the D.C.C.P.P.A. with respect to Morgan, using such acts or practices declared unlawful under the statute set forth above.

157.    Morgan is a "consumer" within the meaning of D.C. Code § 28- 3901(a)(2),

158.    Defendant is a "person[s]" within the meaning of D.C. Code § 28- 3901(a)(1), and provides "services" within the meaning of § 28-3901(a)(7).

159.    Pursuant to D.C. Code § 28- 3905(k)(1):

"(A) A consumer may bring an action seeking relief from the use of a trade practice in violation of a law of the District.

(B) An individual may, on behalf of that individual, or on behalf of both the individual and the general public, bring an action seeking relief from the use of a trade practice in violation of a law of the District when that trade practice involves consumer goods or services that the individual purchased or received in order to test or evaluate qualities pertaining to use for personal, household, or family purposes"

160.    Plaintiff Morgan and members of the D.C. Subclass have been damaged by Navient's conduct, including by paying additional interest and principal on loans that otherwise would have been forgiven under the PSLF program.

WHEREFORE, Plaintiff Morgan, on behalf of himself and the D.C. Subclass, respectfully requests this Court enter a judgment against Defendant, finding that Defendant violated the D.C. Consumer Protection Procedures Act, and pursuant to D.C. Code § 28- 3905(k)(2), awarding actual damages, statutory damages, treble damages, punitive damages, attorneys' fees and costs, and awarding any and all such further relief as is deemed necessary and appropriate.

## COUNT VIII

## VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT

161.    This is an action against Navient on behalf of Lareina and the Colorado Subclass

for violation of the Colorado Consumer Protection Act ("C.C.P.A."), Colo. Rev. Stat. § 6-1-101

*et seq*.

162.    Plaintiff re-alleges and incorporates paragraphs 1 through 117, as fully set forth

herein.

163.    Pursuant to the C.C.P.A., Colo. Rev. Stat. § 6-1-105, in pertinent part, "A person

engages in a deceptive trade practice when, in the course of the person's business, vocation, or

occupation, the person:

> (e) Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith;
>
> (i) Advertises goods, services, or property with intent not to sell them as advertised;
>
> (l) Makes false or misleading statements of fact concerning the price of goods, services, or property or the reasons for, existence of, or amounts of price reductions;
>
> (u) Fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction;

164.    As detailed above, while engaged in trade or commerce, Navient violated

the C.C.P.A. with respect to Lareina, using such acts or practices declared unlawful under

the statute set forth above.

165.    Lareina is a "person" within the meaning of Colo. Rev. Stat. § 6-1-101(6)

166.    Defendant is a "person" within the meaning of Colo. Rev. Stat. § 6-1-101(6).

167.    Plaintiff Lareina and members of the Colorado Subclass have been damaged by Navient's conduct, including by paying additional interest and principal on loans that otherwise would have been forgiven under the PSLF program.

WHEREFORE, Plaintiff Lareina, on behalf of herself and the Colorado Subclass, respectfully requests this Court enter a judgment against Defendant, finding that Defendant violated the Colorado Consumer Protection Act, and pursuant to Colo. Rev. Stat. § 6-1-113, awarding actual damages, statutory damages, treble damages, punitive damages, attorneys' fees and costs, and awarding any and all such further relief as is deemed necessary and appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff is entitled to and hereby respectfully demands a trial by jury.  U.S. Const. Amend. 7 and Fed. R. Civ. P. 38.

Dated:  January 30, 2018                                    Respectfully Submitted,

**KYNES, MARKMAN & FELMAN, P.A.**          **CENTRONE & SHRADER, PLLC**
P.O. Box 3396                                                  612 W. Bay Street
Tampa, Florida  33601                                     Tampa, Florida 33606
Phone:  (813) 229-1118                                    Phone:  (813) 360-1529
Fax:    (813) 221-6750                                       Fax:     (813) 336-0832

/s/ Katherine E. Yanes                                      /s/ Gus M. Centrone

**KATHERINE EARLE YANES, ESQ.**              **BRIAN L. SHRADER, ESQ.**
Florida Bar. No. 658464                                    Florida Bar No. 57251
e-mail: kyanes@kmf-law.com                          e-mail: bshrader@centroneshrader.com
                                                                      **GUS M. CENTRONE, ESQ.**
                                                                      Florida Bar No. 30151
                                                                      e-mail: gcentrone@centroneshrader.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 30, 2018, a true and correct copy of the forgoing was filed with the Clerk of Court for the Middle District of Florida through the CM/ECF system that will give notice to all parties of record.

_/s/ Gus M. Centrone____ ____
**Attorney**