UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EDWING DANIEL, WILLIAM
COTTRILL, BROOKE PADGETT,        CASE NO. 8:17-cv-02503-SCB-JSS
MICHAEL FANELLA, JAMES
MORGAN, ELAINE LAREINA,

     Plaintiffs,

v.

NAVIENT SOLUTIONS, LLC,

     Defendant.

_____/

## PLAINTIFFS' RESPONSE IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

Defendant, Navient Solutions, LCC ("Navient"), has moved (Doc. 28) to strike Plaintiffs' class allegations and to dismiss the First Amended Complaint (Doc. 19) filed by Plaintiffs, Edwing D. Daniel, William Cottrill, Brooke Padgett, Michael Fanella, James Morgan, and Elaine Lareina. Navient's motion to strike Plaintiffs' class allegations is premature and is not well-taken. Further, Plaintiffs' claims are not pre-empted, and Plaintiffs state a cause of action on each of their claims. For these reasons and the reasons set forth in the following Memorandum, Navient's motion to strike and to dismiss should be denied.

## MEMORANDUM

**I.     Background**

**A.     The Public Service Loan Forgiveness Program**

The Public Service Loan Forgiveness (PSLF) program was created in 2007. College Cost Reduction and Access Act of 2007 (CCRAA),  Pub. L. No. 110–84 § 401 (2007). The

PSLF program affords student loan borrowers who work in public service at least ten years and meet certain criteria an opportunity to have their student loan debts forgiven after they have made 120 qualifying payments. To qualify for loan forgiveness, borrowers must:

- make 120 payments after October 1, 2007;

- on an eligible Federal Direct Loan;

- on a qualifying repayment plan; and

- be employed in public service[1] at the time of the loan forgiveness and have been employed in public service during the period in which the 120 payments were made.

28 U.S.C. § 1087e(m)(1).

An "eligible Federal Direct Loan" is a Direct Stafford Loan, Direct PLUS Loan, Direct Unsubsidized Stafford Loan, or Direct Consolidation Loan, § 1087e(m)(3)(A), all of which are loans on which the federal government is the lender. Borrowers with other types of federal student loans, such as Federal Family Education Loan Program (FFELP) or Perkins Loans are not eligible for PSLF. Doc. 19 ¶ 48. Student loan borrowers who have ineligible federal student loans may consolidate their loans into a Direct Consolidation Loan and become eligible for PSLF, but any payments they made prior to consolidation do not count toward the 120 payments required for the program. *Id.* Repayment plans that are eligible for PSLF include income-based or income-contingent repayment plans.[2] § 1087e(m)(1)(A)(i), (iv).

_____

[1] Public service jobs include jobs in emergency management, government, the military, public safety, law enforcement, public health, public education, social work in a public child or family service agency, public interest law, early childhood education, public service for individuals with disabilities, public service for the elderly, public library sciences, school-based library sciences and other school-based services, or at a 501(c)(3) non-profit organization.

[2] Payments made on a standard 10-year payment period, or on a plan with at least the payment amount as a 10-year standard repayment plan, are also eligible for PSLF. § 1087e(m)(1)(A)(ii), (iii). However, borrowers on standard repayment plans will fully pay off their loans in 10 years and have no loans to be forgiven.

### B.    Plaintiffs' Allegations

#### 1.    Navient

Navient is the largest student loan servicer in the United States. Doc. 19 ¶ 35. It services the loans of more than 12 million borrowers, handling more than $300 billion in federal and private student loans. *Id.* Navient's responsibilities as a student loan servicer include informing borrowers about available repayment plans and communicating with them about the repayment of their loans. *Id.* ¶ 36.

The United States Department of Education specifically encourages borrowers to consult their federal student loan servicers with questions about their loans. Doc. 19 ¶ 37. Likewise, Navient holds itself out as a resource borrowers should consult for advice regarding their student loans. *Id.* ¶ 38. Lenders or loan holders, including the Department of Education, contract with Navient to administer all aspects of federal student loan repayment, including responding to borrowers' questions about student loan repayment and loan forgiveness programs. *Id.* ¶ 112. Navient has incentives not to provide borrowers accurate information regarding PSLF eligibility; it loses the right to service the loans of customers whose loans are forgiven. *Id.* ¶¶ 110, 111. Further, Navient rewards its customer service representatives for keeping average call times low, incentivizing them to end calls quickly rather than take the time needed to provide borrowers with accurate advice. *Id.* ¶ 114.

#### 2.    Plaintiffs' experiences

Plaintiff Daniel is the Assistant Dean of M.D. Admissions at the USF College of Medicine. Doc. 19 ¶ 51. Dr. Daniel has inquired repeatedly over the years with Navient and its predecessor regarding his eligibility for the PSLF program. *Id.* ¶¶ 52, 53. Navient's customer service representative provided Dr. Daniel false information regarding what he needed to do

to qualify for the PSLF program, and failed to advise him he needed to be in a specific loan type or repayment plan to qualify for the program. *Id.* ¶¶ 53, 56. Dr. Daniel's loans were not Direct Loans and were therefore ineligible for the PSLF program, despite the assurances Dr. Daniel had received from Navient. *Id.* ¶ 57. If Navient had not misinformed Dr. Daniel, he would have taken action to ensure he was eligible for PSLF. *Id.* ¶ 58. Instead, none of the payments Dr. Daniel has made counted for PSLF purposes. *Id.*

Plaintiff William Cottrill is a meteorologist with the National Weather Service. Doc. 19 ¶ 59. On Mr. Cottrill's inquiry, Navient's predecessor informed Mr. Cottrill he was eligible for the PSLF program. *Id.* ¶¶ 60, 61. In fact, he was not eligible because his student loans were not Direct Loans. *Id.* ¶ 63. Mr. Cottrill was planning to retire once his student loan debt was forgiven; instead none of the payments he has made counted for the PSLF program. *Id.* ¶ 65.

Plaintiff Brooke Padgett is an Assistant State Attorney who has been a prosecutor in the Fourth, Fifth, and Thirteenth Circuits in Florida. Doc. 19 ¶ 66. Ms. Padgett first contacted Navient in 2010 to ensure she was on track to qualify for the PSLF program, and was assured that she was. *Id.* ¶¶ 68-69. Ms. Padgett received similar assurances several times over the past several years. *Id.* ¶¶ 70-72. Ms. Padgett was informed for the first time in 2017 that her loans did not qualify for PSLF because they were not Direct Loans. *Id.* ¶ 75.

Plaintiff Michael Fanella has been a public defender in Cook County, Illinois for more than 25 years. Doc. 19 ¶ 78. Mr. Fanella has contacted Navient numerous times since the PSLF program went into effect to verify whether his loans qualified for PSLF, and was told every time that his loans were eligible for forgiveness. *Id.* ¶ 82. Based on those conversations, Mr. Fanella anticipated that the remainder of his loans would be forgiven in October 2017. *Id.* ¶ 83. He learned at that time, however, that none of his loans were eligible for forgiveness

because they were FFELP and not Direct Loans. *Id.* ¶ 84. After Mr. Fanella complained about Navient's misrepresentations, a Navient "consumer advocate" lied on Navient's behalf in documents filed with the Consumer Financial Protection Bureau regarding the existence of calls from Mr. Fanella. *Id.* ¶¶ 85-89.

Plaintiff James Morgan is a tax law specialist employed by the United States government. Doc. 19 ¶ 91. Mr. Morgan called Navient repeatedly to ensure that he was on track for loan forgiveness. *Id.* ¶ 93. Mr. Morgan first learned in 2017 that several years of his loan payments are not eligible to be counted for the PSLF program. *Id.* ¶¶ 94-95.

Plaintiff Elaine Lareina works for the United States Environmental Protection Agency. Doc. 19 at 16. Navient and its predecessor told her multiple times since 2007 that she was eligible to have her student loans forgiven upon the completion of 120 payments. *Id.* ¶¶ 96-99. Ms. Lariena learned for the first time in 2017 – at the point she thought she was about to qualify for loan forgiveness – that her loans were not eligible for PSLF because they were not Direct Loans. *Id.* ¶¶ 100-02.

### 3. Other Borrowers

Many student loan borrowers have reported similar experiences with Navient. Doc. 19 ¶¶ 103-08. According to the Consumer Financial Protection Bureau, 10 percent of all federal student loan servicing complaints in a recent sample involved the PSLF program, many relating to Navient. *Id.* ¶¶ 104-05. As a result of these issues, borrowers make years of payments they believe qualify for the PSLF program before learning their loans do not qualify for the program. *Id.* ¶¶ 106, 108.

### C.    Plaintiffs' claims

As a result of this conduct, Plaintiffs assert on behalf of themselves and a proposed class of similarly-situated student loan borrowers claims for Breach of Fiduciary Duty (Count I), Negligence (Count II), Unjust Enrichment (Count III), Breach of Implied-in-Law Contract (Count IV), and violation of several state consumer protection statutes (Count V – Florida Consumer Collection Practices Act, Fla. Stat. § 559.72; Count VI – Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 501, *et seq.*; Count VII – D.C. Consumer Protection Procedures Act, D.C. Code Ann. § 28.3901 *et seq.*; Count VIII – Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 *et seq.*). Doc. 19.

## II.    Navient's motion to strike Plaintiffs' class allegations is premature and unfounded.

Navient first moves this Court to strike Plaintiffs' class action allegations on the theory Plaintiffs' proposed national class and state subclasses do not satisfy the requirements of Federal Rule of Civil Procedure 23. Doc. 28 at 12. Specifically, Navient argues Plaintiffs will fail to satisfy the commonality, predominance, and superiority requirements because determining its liability "will require a highly fact-intensive and individualized analysis of the interactions that [Navient] had with hundreds of thousands of its borrowers." *Id.* Navient's motion to strike is without legal support and is premature, and should therefore be denied.

Navient begins its argument by generally citing to Rule 23(c)(1), which requires the Court "[a]t an early practicable time after a person sues or is sued as a class representative" to "determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1); Doc. 28 at 10. Navient, however, omits the pertinent – and demanding – legal standard it must satisfy: "[O]n a motion to strike pursuant to Rule 23, the Rule 23 factors should be viewed

through the lens of the Rule 12(f) standard for motions to strike." *DeJesus v. Cigna Corp.*, 2018 WL 375579, at 2 (M.D. Fla. Jan. 11, 2018) (citing *Gill-Samuel v. Nova Biomedical Corp.*, 298 F.R.D. 693 (S.D. Fla 2014)) (internal quotation marks omitted). The Court may only strike an allegation from a pleading that is "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). "Motions to strike may be granted only if 'the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party.'" *Argentine v. Bank of Am. Corp.*, No. 2015 WL 12844395, at *1 (M.D. Fla. July 29, 2015) (quoting *United States v. MLU Servs., Inc.*, 544 F. Supp. 2d 1326 (M.D. Fla. 2008)). "In the context of motions directed to allegations of class certification as insufficient under [Rule 23], the court must be particularly hesitant to decide matters against a class in view of the absence of a developed factual record." *Id.*

Applying the Rule 12(f) standard, Navient's motion fails because Plaintiffs' allegations are not redundant, immaterial, impertinent, or scandalous. In their 28-page First Amended Complaint, Plaintiffs plead in detail each of the pertinent requirements to maintain a Rule 23(b)(3) class action – numerosity, commonality, typicality, adequacy, predominance, and superiority – and the factual basis for asserting each requirement will be met at the class certification stage. Doc. 19 at 4–7. None of the allegations improperly disparage Navient, are repetitive, or are otherwise superfluous to the issues of this case.

The three factors Judge Lazzara considered in *Argentine* also weigh in Plaintiffs' favor. Plaintiffs' class action allegations bear a strong relationship to this matter (a potential class action against Navient), do not confuse the factual or legal issues to be decided, and do not prejudice Navient other than to require it to answer discovery as to the potential class and subclasses. The latter consideration – expanded discovery – is a matter of course in all potential

class action cases, regardless of whether the class is eventually certified. Therefore, this Court should decline to strike Plaintiffs' class action allegations.

Moreover, Navient's assertion that Plaintiffs will fail to meet particular Rule 23 requirements is pure conjecture and calls for a premature analysis by this Court into the viability of class certification. It is well established in the Middle District of Florida that an order on class certification is premature prior to discovery and the parties having an opportunity to thoroughly brief the Rule 23 requirements. *See, e.g.*, *Fosbrink v. Area Wide Protective, Inc.*, 2017 WL 6947421, at *2 (M.D. Fla. Aug. 23, 2017) ("Here, Defendant's request to deny certification of the proposed classes is premature. The allegations in the Amended Complaint are not so facially defective to allow this Court to deny certification without Plaintiff being allowed to take discovery to try to satisfy the requirements of [R]ule 23."); *Argentine*, 2015 WL 12844395, at *1 ("The Court…agrees with Plaintiff that the motion to strike the allegations of class certification is premature."); *James D. Hinson Elec. Contracting Co., Inc. v. AT&T Servs., Inc.*, 2014 WL 1118015, at *4 (M.D. Fla. Mar. 20, 2014) (holding it was premature to strike class action allegations based on the pleadings). As explained above, in lieu of arguing Plaintiffs' class action allegations should be stricken under Rule 12(f) – a tacit admission they cannot make such an argument – Navient instead asks this Court to engage in a class certification evaluation based solely on the First Amended Complaint and its own motion. Plaintiffs, however, have not yet obtained the requisite discovery[3] to determine the number of potential class members, how class members may be

---

[3] Plaintiffs have attempted to obtain the needed discovery; however, Navient has failed to cooperate with Plaintiffs' discovery requests.  Plaintiffs have filed a motion to compel. Doc. 36.

identified, and most importantly what policies or procedures Navient had that may have resulted in identical misrepresentations regarding the PSLF program to large groups of borrowers whom Navient serviced. Without this information, Plaintiffs cannot fairly respond to Navient's attacks on commonality, predominance, and superiority, which it may raise again at the class certification stage. Navient's motion to strike should therefore be denied for the additional reason that it is premature.

## III. Defendant's motion to dismiss should be denied.

### A. Plaintiffs' claims are not preempted.

The Court should reject Navient's contention, Doc. 28 at 14-17, that Plaintiffs' claims are preempted by the Higher Education Act ("HEA"). As the Eleventh Circuit has stated, courts considering preemption "start with the assumption that the historic police powers of the states are not superseded by federal law unless preemption is the clear and manifest purpose of Congress." *Cliff v. Payco General Am. Credits, Inc.*, 363 F.3d 1113, 1122 (11th Cir. 2004). "[T]he Supreme Court has identified three types of preemption: (1) express preemption; (2) field preemption; and (3) conflict preemption." *Id.* "Express preemption" exists when Congress has explicitly stated in a statute its intent to preempt state law. *Id.* "Field preemption" takes place "when federal regulation in a legislative field is so pervasive that" Congress has "occupied the field," that is, has "left no room for the states to supplement it." *Id.* Finally, "[c]onflict preemption," arises when "it is impossible to comply with both federal and state law" or "state law stands as an obstacle to achieving the objectives of the federal law." *Id.*

The Eleventh Circuit has held that field preemption does not apply to the HEA. *Cliff*, 363 F.3d at 1126; *accord Chae v. SLM Corp.*, 593 F.3d 936, 941-42 (9th Cir. 2010). Navient

argues, however, that express preemption and conflict preemption may apply to the HEA. For the reasons explained below, neither form of preemption precludes Plaintiffs' claims.

### 1.     Plaintiffs' claims are not expressly preempted.

Navient argues that 20 U.S.C. Section 1098g, which provides that federal student loans "shall not be subject to any disclosure requirement of any State law," expressly preempts Plaintiffs' claims. Doc. 28 at 14. Where a statute expressly preempts state law, the Court must "'identify the domain expressly pre-empted' by" the statute's language. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484 (1996) (quoting *Cipollone v. Liggett Group*, 505 U.S. 504, 517 (1992)). Further, while the Court's preemption analysis "of the scope of the pre-emption statute must begin with its text … that interpretation is informed by two presumptions about the nature of pre-emption." *Id.* at 484-85. First, there is a presumption against preemption in the areas in which states have historically exercised their police powers. *Id.* at 485; *see also Cliff*, 363 F.3d at 1122. This "presumption is a 'cornerstone of [the federal courts'] pre-emption jurisprudence.'" *Graham v. R.J. Reynolds Tobacco Co.*, 857 F.3d 1169, 1293–94 (11th Cir. 2017), *cert. denied*, 138 S. Ct. 646 (2018) (quoting *Wyeth v. Levine*, 555 U.S. 555, 565 (2009)). It "carries particular force when … 'federal law is said to bar state action in fields of traditional state regulation.'" *Id.* at 1294 (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)).

Second, the Court's understanding of the scope of the preemption statute must be informed by Congress's purpose, as revealed through the statute's language and the structure and purpose of the statute as a whole. *Medtronic,* 518 U.S. at 485-86. "The purposes underlying the HEA's loan programs are fourfold: to enable the Secretary of Education to encourage lenders to make student loans, to provide student loans to those students who might not

otherwise have access to funds, to pay a portion of the interest on student loans, and to guarantee lenders against losses." *Cliff*, 363 F.3d at 1127 (citing 20 U.S.C. § 1071(a)(1)).

Applying these principles here makes it clear that the provision Navient relies on does not preempt Plaintiffs' claims. Consumer protection is an area traditionally regulated by the states in which the weighty presumption against preemption applies. *See, e.g.*, *California v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989); *Chae*, 593 F.3d at 944; *In re Pryor*, 479 B.R. 694, 698 (Bankr. E.D.N.C. 2012). Moreover, Plaintiffs do not seek to apply to Navient any state-law disclosure requirements that would alter or heighten Navient's disclosure obligations under federal law. Instead, Plaintiffs assert common-law and consumer causes of action based not on Navient's failure to disclose information regarding the PSLF program, but on its affirmative misrepresentations to the Plaintiffs regarding the status of their loans under that program.

In support of its argument, Navient cites cases holding that state-law claims based on improper disclosures, or failure to disclose information the HEA does not require disclosure of, are expressly preempted. Doc. 28 at 14-16 (citing *Chae*, 593 F.3d at 941-43; *Linsley v. FMS Inv. Corp.*, 2012 WL 1309840, at *6 (D. Conn. Apr. 17, 2012); *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1226 (11th Cir. 2002)).[4] Navient's cases are inapplicable here.

For example, the *Chae* plaintiff argued that the billing statements and coupon books the loan servicer sent customers were misleading. 593 F.3d at 942. The Ninth Circuit described the plaintiff's claims as fundamentally "improper-disclosure claims." *Id.* at 942. The court

---

[4]Navient also cites, Doc. 28 at 15, *United States v. Gorski*, 2012 WL 12886823, at * 7 (C.D. Cal. Mar. 22, 2012), which involves a pro se litigant who filed a 14-count counterclaim in response to a lawsuit filed against him for failure to pay his student loans. *Id.* at *1-2. While the district court in *Gorski* dismissed with little discussion the borrower's state-law counterclaims as being preempted, the nature of the claims is not clear from the opinion.

noted the federal statutes and regulations that govern the written disclosures student loan servicers must provide, and held that "plaintiffs' claims challenging the language in Sallie Mae's billing statements and coupon books are restyled improper-disclosure claims" that were expressly preempted. *Id*. at 943; *see also Linsley*, 2012 WL 1309840 at *3, *6 (plaintiff's claim lender's written communications misrepresented options to cure loan default was expressly preempted where it was predicated on failure to properly disclose HEA's requirements).

This case is unlike *Chae* and *Linsley* for reasons that were explained in *Genna v. Sallie Mae*, 2012 WL 1339482 (S.D.N.Y. Apr. 17, 2012). *Genna* involved claims arising from a student loan servicer's explicit misrepresentations to the borrower that his loan was properly enrolled in auto-debit payments, that he was being granted a forbearance, and that his loan would be serviced in the same manner as it was by the prior servicer. *Id*. at *1, *3. In words that apply equally here, the *Genna* court rejected the servicer's argument the claims were expressly preempted, explaining that the case was distinguishable from *Chae*:

> In *Chae,* the plaintiffs challenged written statements that were explicitly regulated and sanctioned by federal law. In contrast, the statements at issue here were neither authorized by the Secretary of Education nor conformed to any explicit dictates of federal law. There is nothing in the HEA that standardizes or coordinates how a customer service representative of a third-party loan servicer like Sallie Mae shall interact with a customer like Genna in the day-to-day servicing of his loan outside of the circumstance of pre-litigation informal collection activity. Sallie Mae has not shown that § 1098g, or anything else in the HEA, expressly preempts Genna's claims.

*Id*. at *8; *see also Davis v. Navient Corp*., Case No. 1:17-cv-00992-LJV-JJM, Doc. 25 (W.D.N.Y. Mar. 12, 2018), attached as Exhibit A, at 5 (claims arising from student loan servicer's "unregulated conduct over the telephone" were "not subject to express preemption").

Plaintiffs do not claim merely that Navient failed to disclose the requirements of the PSLF program. Instead, Plaintiffs assert that Navient made affirmative misrepresentations to

them. Doc. 28 ¶¶ 52, 53, 61, 69, 82, 93, 97. This contrasts not only with the out-of-jurisdiction improper disclosure cases Navient cites, but also with the Eleventh Circuit case Navient relies on, *McCulloch*, in which the court specifically noted that the plaintiffs had "identified no affirmative misrepresentations" by the loan servicer. 298 F.3d at 1225.  The Court should hold that claims based on Navient's affirmative misrepresentations are not preempted.

### 2. Conflict preemption does not preclude Plaintiffs' claims.

Navient also argues that Plaintiffs' claims are barred by conflict preemption on the theory that applying state-law causes of action to its conduct is inconsistent with the intent of Congress to create a uniform structure for servicing federal student loans. Doc. 28 at 17. As the Eleventh Circuit has recognized, a claim is conflict preempted by the HEA only if either: (1) it is not possible to comply with both the HEA and state law; or (2) complying with state law would interfere with accomplishing the objectives of the HEA. *Cliff*, 363 F.3d at 1126-30. As discussed above, the Eleventh Circuit has described Congress's purposes in enacting the HEA as being: "to enable the Secretary of Education to encourage lenders to make student loans, to provide student loans to those students who might not otherwise have access to funds, to pay a portion of the interest on student loans, and to guarantee lenders against losses." *Cliff*, 363 F.3d at 1127 (citing § 1071(a)(1)). *Cliff* recognized that state consumer protection causes of action may co-exist compatibly with these objectives. *Id.* Using similar logic, numerous courts have held state-law claims are not preempted by the HEA where they are not directed against activity necessary to comply with the HEA.[5]

---

[5]*Riel v. Navient Sols. Inc.*, 2017 WL 168900, at *6 (E.D. Wis. Jan. 17, 2017) (holding prohibition against harassment of debtors was not an obstacle to HEA regulations, "especially in light of the presumption against preemption"); *Weber v. Great Lakes Educ. Loan Services, Inc.*, 2013 WL 3943507, at *4 (W.D. Wis. July 30, 2013) (regulations promulgated under the

Here, Plaintiffs' claims are entirely consistent with the purposes of the HEA. Indeed, the Eleventh Circuit held in *Cliff* that the same subsection of the FCCPA Plaintiffs rely on for one of their claims here, section 559.72(9), is not preempted by HEA regulations regarding the collection of delinquent student loans. 363 F.3d at 1128. The court explained:

> For us to conclude that this provision of the Florida Act hinders the completion of the sequence of collection activities, we would have to first conclude that the regulations require a third-party debt collector to attempt to collect a debt that it knows is not legitimate or to assert the existence of a legal right that it knows does not exist. We are certain that the HEA and its regulations do not contemplate third-party debt collectors attempting to collect debts that are not legitimate or asserting rights that do not exist.

*Id*. at 1129; *see also Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 654 (7th Cir. 2015) (where "plaintiffs' state law claims were complementary to, not in conflict with, the federal requirements," they were not precluded by conflict preemption). Likewise, to hold here that Plaintiffs' claims are preempted would suggest that the HEA permits loan servicers to lie to the borrowers whose loans they service. Far from supporting the aims of the HEA, such an interpretation would undermine confidence in the student loan system.

Navient cites a number of cases holding that conflict preemption can sometimes apply to the HEA, Doc. 28 at 15 & n.4 (citing *College Loan Corp. v. SLM Corp.*, 396 F.3d 588, 595-96 (4th Cir. 2005); *Chae*, 593 F.3d at 943; *Brooks v. Sallie Mae, Inc.*, 2011 WL 383802, at *7-8 (Conn. Sup. Court Jan. 4, 2011); *Seals v. Nat'l Student Loan Program*, 2004 WL 3314948, at *5-6 (N.D.W.Va. Aug. 16, 2004); *Snuffer v. Great Lakes Educ. Loan Servs.*, 97 F. Supp. 3d

HEA "do not authorize debt collectors to engage in abusive debt collection activities, and it is a stretch to say that rules prohibiting what a state deems an abusive collection practice obstructs Congress's goals under the HEA"); *Murungi v. Texas Guaranteed*, 646 F. Supp. 2d 804, 810 (E.D. La. 2009) (state-law claim not preempted by HEA where HEA regulations did not require services "to make a misrepresentation, suppression, or omission.").

827, 832 (S.D.W.Va. 2015); *Williams v. National School of Health Tech.*, 836 F. Supp. 273, 281 (E.D. Pa. 1993). That conflict preemption with the HEA may sometimes exist regarding some claims does not establish that it applies to the claims Plaintiffs assert here. Navient provides no convincing explanation regarding how allowing Plaintiffs to assert their state-law causes of action would interfere with achieving the HEA's objectives. The only goal Navient suggests could be impacted by Plaintiffs' claims is creating "a uniform structure for servicing Direct Loans." Doc. 28 at 17. Uniformity was not one of Congress's expressed goals in enacting the HEA,[6] *see Cliff*, 363 F.3d at 1127 (citing § 1071(a)(1)). Indeed, one of the cases Navient cites, *College Loan Corp.*, rejects the uniformity argument Navient makes here. 396 F.3d at 597-98. Likewise, another of the cases Navient cites, *Snuffer*, rejects the premise that provisions of state law that bar fraudulent collection practices conflicts with the objectives of the HEA. 97 F. Supp. 3d at 832.

For these reasons, Plaintiffs claims are not conflict preempted by the HEA.

**B.      Plaintiffs state claims on Counts-IV of their Amended Complaint.[7]**

**1.      Plaintiffs state a claim for breach of fiduciary duty.**

Plaintiffs state a cause of action against Navient for breach of fiduciary duty.  Under Florida law, "[t]he elements of a cause of action for breach of fiduciary duty are: (1) the

---

[6]While the Ninth Circuit in *Chae* found "congressional intent that FFELP participants be held to clear, uniform standards," it made this statement in the context of claims relating to a loan servicer's "method for calculating interest, assessing late fees and setting the repayment start date on their loans," 593 F.3d at 938, 944, 947, all of which are areas closely regulated by the HEA.  As the Ninth Circuit explained, the challenged California law would have penalized lenders for practices the HEA expressly permits.  *Id.* at 947-49.  There is no argument here that the HEA permits lenders to misrepresent to borrowers the status of their loan or to falsely inform them that loans qualify for the PSLF.
[7]Navient does not argue Plaintiffs fail to state a cause of action on the statutory consumer protection claims set forth in Counts V-VIII of their Complaint.

existence of a fiduciary duty, (2) breach of that duty, and (3) damages flowing from the breach." *Hepp v. Paul Revere Life Ins. Co.*, 120 F. Supp. 3d 1328, 1341 (M.D. Fla. 2015). The complaint alleges that Navient holds itself out to borrowers as a resource to find the best path to loan repayment and that "Plaintiffs placed trust in Navient to determine the best path for repayment and Navient accepted and invited that trust." Doc. 19 ¶¶ 38, 41. Navient, however, provided Plaintiffs and other borrowers who inquired about their eligibility for the PSLF program with inaccurate information. *Id.* ¶¶ 53, 56, 61, 62, 69, 82, 93, 97, 104-06. Plaintiffs were damaged by this false information. *Id.* ¶¶ 58, 65, 75, 83-84, 95, 101-02.

Navient argues that Plaintiffs' fiduciary duty claim should be dismissed on the theory Navient did not have a fiduciary relationship with them. Doc. 28 at 18-19. In support of this argument, Navient relies on the principle that lenders are generally not fiduciaries to debtors. *Id.* at 18. Navient appears to have overlooked the exception to this general rule that is applicable here, where special circumstances exist because Navient knows borrowers trust and confidence in it and relied on it. Fiduciary relationships may be implied in law based on "the specific factual situation surrounding the transaction and the relationship of the parties." *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. 3d DCA 1994). "[A] fiduciary relationship may arise under 'special circumstances' where the bank knows or has reason to know that the customer is placing trust and confidence in the bank and is relying on the bank so to counsel and inform [the customer]." *Edwards v. Green Tree Servicing, LLC*, 2015 WL 6777463, at *8 (N.D. Fla. Oct. 22, 2015); *see also Capital Bank*, 644 So. 2d at 518 (collecting cases). This can take place, for instance, where the bank "takes on extra services for a customer," *Edwards*, 2015 WL 6777463, at *8, holds itself out as being an expert, *Stonecreek-AAA, LLC v. Wells Fargo Bank N.A.*, 2013 WL 5416970, at *9 (S.D. Fla. Sept. 26, 2013);

advises the customer regarding a financial transaction, *id.*; *Branch Banking & Tr. Co. v. Nat'l Fin. Services, LLC*, 2014 WL 2019301, at *3 (M.D. Fla. May 16, 2014), or assures the customer that it need not seek advice elsewhere, *First Nat. Bank & Tr. Co. of Treasurer Coast v. Pack*, 789 So. 2d 411, 416 (Fla. 4th DCA 2001).

Whether special circumstances exist that gave rise to a fiduciary relationship is a factual question, *Yaffa v. SunSouth Bank*, 2015 WL 1485010, at *2 (N.D. Fla. Mar. 31, 2015), and should not be resolved on a motion to dismiss. Plaintiffs have alleged facts from which a jury could find such a relationship arose. Navient did not merely service Plaintiffs' loans by sending Plaintiffs invoices and collecting their payments. It held itself out to customers as having expertise regarding their repayment options, and in fact provided customers with advice regarding loan repayment, and specifically whether the program they were in would qualify them to have their loans forgiven.

Plaintiffs state a claim for breach of fiduciary duty.

### 2. Plaintiffs state a claim for negligence.

Plaintiffs state a cause of action against Navient for negligence because Navient undertook to advise the Plaintiffs regarding whether their loan payments would qualify for the PSLF program; having undertaken to give that advice, Navient was obligated to act with reasonable care in doing so. A negligence claim under Florida law requires a plaintiff to "establish that the defendant owed a duty, that the defendant breached that duty, and that this breach caused the plaintiff damages." *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1094 (11th Cir. 2017) (quoting *Fla. Dep't of Corr. v. Abril*, 969 So.2d 201, 204 (Fla. 2007)). Plaintiffs have alleged that Navient violated its duty of care to them by providing them false

information regarding the status of their eligibility for the PSLF program, and that they were harmed by this breach. Doc. 19 ¶¶ 125-27.

Navient argues that it did not owe a duty of care to Plaintiffs because the parties were in an arms-length relationship. Doc. 28 at 19. For purposes of the duty required to establish a negligence claim, however, Florida law recognizes "one who undertakes to act, even when under no obligation to do so, thereby becomes obligated to act with reasonable care." *Stonecreek*, 2013 WL 5416970, at *8 (quoting *Nova Southeastern University, Inc. v. Gross,* 758 So.2d 86, 89 (Fla. 2000)). Having voluntarily offered Plaintiffs advice regarding whether their loan payments qualified for the PSLF program, Navient acted negligently by repeatedly providing them inaccurate information.

Plaintiffs state a claim for negligence.

### 3.  Plaintiffs state a claim for unjust enrichment/implied contract.

Plaintiffs assert alternative claims for unjust enrichment and implied contract in the event no other remedy is found to exist for Navient's wrongful conduct. "Under Florida law, the elements of unjust enrichment are (1) plaintiff conferred a benefit on the defendant; (2) defendant voluntarily accepted and retained the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Taghadoss v. Bank of Am., N.A.*, 2017 WL 6536581, at *2 (M.D. Fla. Dec. 21, 2017).  The elements of a breach of a contract implied at law claim are analogous. *Rite-Way Painting & Plastering, Inc. v. Tetor*, 582 So. 2d 15, 17 (Fla. 2d DCA 1991).

Navient was compensated for servicing Plaintiffs' loans, including advising Plaintiffs regarding their best options for loan repayment. Doc. 19 at 112. Having accepted and benefitted

from this compensation, Navient misadvised Plaintiffs, with the result that they have missed out on the benefits of the PSLF program they would otherwise have been entitled to.

Navient argues Plaintiffs' unjust enrichment and implied contract claims are duplicative. Doc. 28 ¶ 19. Navient's argument is premature. Judge Moody of this Court has addressed precisely this issue and held it is not proper to resolve this issue on a motion to dismiss and prior to discovery. *Krush Commn's, LLC v. Network Enhanced Telecom, LLP*, 2014 WL 12628601, at *1 (M.D. Fla. Mar. 5, 2014). Instead, summary judgment is the proper vehicle if the claims ultimately prove to be duplicative. *Id*. Further, although parties "may present alternative claims to the finder of fact," they may not be awarded duplicative damages. *Id.* As a result, there would be no prejudice to Navient from any possible duplication.

Navient also argues Plaintiffs fail to state a cause of action on their unjust enrichment/implied-in-law contract claims on the theory Plaintiffs have not conferred a benefit on Navient because as servicer Navient collects loan payments on behalf of the Department of Education, not its own behalf. Doc. 28 at 19. As an initial matter, whether a defendant benefitted at the plaintiff's expense is a "is a factual question not appropriately resolved on a motion to dismiss." *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222, 1228 (Fla. 1st DCA 2005). In any event, however, Plaintiffs allege that Navient has not only benefitted from Plaintiffs' payments, but is also compensated for administering Plaintiffs' student loans, including helping Plaintiffs' navigate the requirements of the PSLF program. Doc. 19 ¶ 112. It matters little whether the money Navient receives from borrowers' payments is paid directly by borrowers or indirectly by way of the Department of Education. Courts have rejected precisely the argument Navient makes here where the customer's payment went to a third party, and the third party compensated the allegedly unjustly enriched party. *See, e.g.*

*Zamber v. Am. Airlines, Inc.*, 282 F. Supp. 3d 1289, 1301 (S.D. Fla. 2017) (plaintiff airline customers adequately alleged airline benefitted from travel insurance fee where a portion of the fee was ultimately paid to the airline); *Williams v. Wells Fargo Bank N.A.*, 2011 WL 4901346, at *5 (S.D. Fla. Oct. 14, 2011) (plaintiffs adequately alleged bank benefitted from its wrongful conduct relating to insurance premiums where they alleged bank received kickbacks or commissions from the insurance premiums the plaintiffs paid).

Plaintiffs thus state a claim for unjust enrichment and breach of implied-at-law contract.

## CONCLUSION

For these reasons, Navient's motion to strike class allegations and to dismiss should be denied.

Respectfully submitted

/s/ *Katherine Earle Yanes*
Katherine Earle Yanes (FBN 0159727)
kyanes@kmf-law.com
Brandon K. Breslow (FBN 0123755)
bbreslow@kmf-law.com
KYNES, MARKMAN & FELMAN, P.A.
Post Office Box 3396
Tampa, Florida 33601-3396
Telephone:      (813) 229-1118
Facsimile:      (813) 221-6750
*Co-Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of this Response was furnished to

all counsel of record listed below by the CM/ECF System, on April 23, 2018:

Ashley Rector
Dayle M. Van Hoose
arector@sessions.legal
dvanhoose@sessions.legal

Gus M. Centrone
Brian L. Shrader
Centrone & Shrader, LLC
gcentrone@centroneshrader.com
bshrader@centroneshrader.com

/s/ *Katherine Earle Yanes*
Katherine Earle Yanes