UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EDWING DANIEL,
WILLIAM COTTRILL,                          CASE NO. 8:17-cv-02503-SCB-JSS
BROOKE PADGETT,
ELAINE LAREINA LAI,

     Plaintiffs,

v.

NAVIENT SOLUTIONS, LLC,

     Defendant.

_____/

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND SUPPORTING MEMORANDUM

Gus M. Centrone
  Florida Bar No. 57251
Brian L. Shrader
  Florida Bar No. 30151
CENTRONE & SHRADER, PLLC
612 W. Bay Street
Tampa, FL 33606
Telephone:    (813) 360-1529
Facsimile:    (813) 336-0832
gcentrone@centroneshrader.com
bshrader@centroneshrader.com

Katherine Earle Yanes
  Florida Bar No. 0159727
Brandon K. Breslow
  Florida Bar No. 0123755)
KYNES, MARKMAN & FELMAN, P.A.
Post Office Box 3396
Tampa, Florida 33601-3396
Telephone:    (813) 229-1118
Facsimile:    (813) 221-6750
kyanes@kmf-law.com
bbreslow@kmf-law.com

*Co-Counsel for Plaintiffs*

## I.     Introduction

Plaintiffs move pursuant to FRCP 23(b)(3) to certify the class and subclasses described below against Defendant Navient Solutions, LCC, appoint Plaintiffs as Class Representatives, and appoint Plaintiffs' Counsel as Class Counsel. This class action seeks redress for affirmative misrepresentations Navient made to numerous borrowers that their student loans qualified for the Public Service Loan Forgiveness (PSLF) program when in fact the loans did not qualify because they were not the right loan type and/or the borrower was not on a qualifying repayment plan. It is estimated Navient made such misrepresentations to at least tens of thousands of borrowers.

The proposed class and subclass meet all of the requirements for class certification set forth in Rule 23 subsections (a) and (b)(3). The prerequisites of subsection (a) – numerosity, the presence of common questions of law or fact, the typicality of the representative Plaintiffs' claims, and their adequacy to represent the class – are all satisfied. The further requirements of subsection (b)(3), that common questions predominate over individual questions and that a class action is the superior method of adjudicating those common questions, are also met. Navient's conduct toward the Plaintiffs resulted from systemic issues that affected numerous borrowers in a uniform fashion, and this case involves overarching questions common to the members of the proposed class, the resolution of which are necessary to a finding of liability against Navient. Additionally, it would be inefficient for each class member to sue Navient for the individual damages at stake here.

## II.     Factual Background and Summary of Common Classwide Evidence

While discovery is ongoing, the evidence developed to date establishes that class-wide issues will predominate over individual questions and that class certification is appropriate.

### A.     The Public Service Loan Forgiveness Program

The PSLF program was created in 2007. College Cost Reduction and Access Act of 2007

1

(CCRAA), Pub. L. No. 110–84 § 401 (2007). It allows certain student loan borrowers to have their student loans forgiven. To qualify for loan forgiveness, borrowers must:

- not be in default on the loan for which forgiveness is sought;
- make 120 on-time payments after October 1, 2007;
- on an eligible[1] Federal Direct Loan;
- on a qualifying repayment plan; and
- be employed in public service[2] at the time of the loan forgiveness and have been employed in public service during the period in which the 120 payments were made.

28 U.S.C. § 1087e(m)(1); 34 C.F.R. § 685.219.

### B. Common evidence regarding Navient's affirmative misrepresentations to borrowers regarding their PSLF program status.

The experiences of the named Plaintiffs and other borrowers demonstrate a common pattern of Navient customer service representatives making affirmative misrepresentations to borrowers regarding their eligibility for the PSLF program.

### 1. Named Plaintiffs

Plaintiff Edwing Daniel works full time as the Assistant Dean of medical school admissions at the USF College of Medicine, Doc. 111 Ex. 2[3] at 29-30. He has worked in public

---

[1] An "eligible Federal Direct Loan" is a Direct Stafford Loan, Direct PLUS Loan, Direct Unsubsidized Stafford Loan, or Direct Consolidation Loan, § 1087e(m)(3)(A), all of which are loans on which the federal government is the lender. Borrowers with other types of federal student loans, such as Federal Family Education Loan Program (FFELP) or Perkins Loans are not eligible for PSLF. Student loan borrowers who have ineligible federal student loans may consolidate their loans into a Direct Consolidation Loan and become eligible for PSLF, but any payments they made prior to consolidation do not count toward the 120 payments required for the program. Repayment plans that are eligible for PSLF include income-based or income-contingent repayment plans. § 1087e(m)(1)(A)(i), (iv). Payments made on a standard 10-year payment period, or on a plan with at least the payment amount as a 10-year standard repayment plan, are also eligible for PSLF. § 1087e(m)(1)(A)(ii), (iii). However, borrowers on standard repayment plans will fully pay off their loans in 10 years and have no loans to be forgiven.

[2] Public service jobs include jobs in emergency management, government, the military, public safety, law enforcement, public health, public education, social work in a public child or family service agency, public interest law, early childhood education, public service for individuals with disabilities or the elderly, public library sciences, school-based library sciences and other school-based services, or at a 501(c)(3) non-profit organization. § 685.219(b).

[3] Plaintiffs previously filed 26 exhibits in connection with the original motion for class certification, Doc. 111 Ex. 1-26, many of which were filed under seal. To avoid burdening the record with duplicative exhibits, where applicable this motion will cite to the exhibits to the original motion for class certification.  Numbering of the exhibits to this motion will begin with Exhibit 27.

service since 2002. *Id.* at 29-30, 32-33, 35-36. Dr. Daniel has had numerous telephone conversations over at least the past seven years with Navient.[4] Doc. 111 Ex. 1 at Ex. 2. Sometime after 2010, Dr. Daniel contacted Navient because he had heard about the PSLF program. Doc. 111 Ex. 2 at 57-59, 66. Navient provided him with information about the program, including that he was required to be a government employee and to make at least 120 on-time payments. *Id.* at 58, 78. Navient told Dr. Daniel that as long as he fulfilled those parameters, he would be able to have his student loans forgiven. *Id.* at 68, 85, 100-01. This was false. Dr. Daniel's loans were not Direct Loans and were therefore ineligible for the PSLF program. *Id.* at 106, 113; Doc. 111 Ex. 2 at Ex. 6.

Plaintiff William Cottrill has worked full time as a meteorologist with the National Weather Service since 2007. Doc. 111 Ex. 3 at 22-24. He learned of the PSLF program in around 2010. *Id.* at 30. Shortly after, Mr. Cottrill called Navient to ask about PSLF and what he needed to do to qualify for it.[5] *Id.* at 32. He told the customer service representative that he wanted to be sure he was doing the right things to qualify for PSLF. *Id.* He was told he had the right loans and all he needed to do was apply for forgiveness upon his 10-year work anniversary in public service. *Id.* Navient told Mr. Cottrill three times that he was "set to go" and did not need to do anything other than make timely monthly payments for 10 years and apply for loan forgiveness after ten years of working in public service. *Id.* at 33-34; *see also id.* at 40. In fact, Mr. Cottrill was never eligible for PSLF loan forgiveness because his student loans were not Direct Loans and none of the payments he has made counted for the PSLF program. *Id.* at 29, 38, 59.

---

[4]Although Navient's records reflect numerous calls between Dr. Daniel and Navient, Doc. 111 Ex. 1 at Ex. 2, Navient has not produced all of Dr. Daniel's calls as requested, including the call on which his eligibility for the PSLF program was discussed.

[5]Navient's records reflect several calls from Mr. Cottrill in 2010, Doc. 111 Ex. 1 at Ex. 5; Navient has not produced any of those call recordings, including the recording of the call on which his eligibility for the PSLF program was discussed.

Plaintiff Brooke Padgett has worked full time as a state prosecutor in Florida since 2010. Doc. 111 Ex. 4 at 20. Ms. Padgett had two student loans, both serviced by Navient. *Id.* at 17. She was under the impression one of the loans qualified for PSLF and the other loan did not. *Id.* at 34. Consistent with this understanding, Navient's customer service representatives distinguished between what they described as Ms. Padgett's "Sallie Mae" or "federal and private" loans and her "Department of Education" loans. Doc. 111 Ex. 4 at Ex. 3. In 2010 or 2011, Ms. Padgett called Navient because the income-driven payment on her Department of Education loan was $0 and she wanted to make sure those payments would count for PSLF purposes.[6] Doc. 111 Ex. 4 at 31-32. The Navient customer service representative reassured Ms. Padgett that her $0 payments counted for PSLF purposes. *Id.* at 32-33. In February 2013, Ms. Padgett had a conversation with a Navient customer service representative in which she asked whether a payment would be reflected as on time, stating she was concerned about this because she worked for the State and if she made on-time payments for 10 years, her loans would be forgiven. Doc. 111 Ex. 4 at Ex. 3. The Navient customer service representative asked her whether she was referring to PSLF, and told her that she would need to consolidate her loans "to have all Direct Loans to make certain that all of [her] loans would qualify" for PSLF. *Id.* The Navient customer service representative stated that Ms. Padgett's "older FFELP loans, which is what [her] federal and private loans [were], would not qualify" for PSLF. *Id.* The customer service representative encouraged her to consolidate her loans "and everything then would qualify" for PSLF. *Id.* Ms. Padgett understood that statement to corroborate her prior understanding – that her older student loans did not qualify for PSLF and would not qualify unless they were consolidated into Direct Loans[7], while her more

---

[6]Navient's records reflect several calls from Ms. Padgett. Doc. 111 at Ex. 1 at Ex. 9. Navient has not produced all of those recordings, including the recording of the initial call on which her eligibility for the PSLF program was discussed.
[7]Ms. Padgett was rightly concerned that consolidating her loans would restart the count on qualifying PSLF payments.

recent student loans qualified. Doc. 111 Ex. 4 at 41-44, 56-57, 72. On a call in November 2016, Ms. Padgett informed a Navient customer service representative she was shooting for the "ten-year loan forgiveness plan," and asked whether the forbearance she was requesting would affect her eligibility for that. Ex. 30 at 11. Navient reassured Ms. Padgett that the forbearance would not remove her from the loan forgiveness program and that once she restarted the payments on her income-driven plan, the repayment counter for the 120 payments needed for loan forgiveness would resume. *Id.* In June 2017, on a call with Navient, Navient told Ms. Padgett none of her loans qualified for PSLF. Doc. 111 Ex. 4 at 39. Ms. Padgett had never previously been told that none of her loans qualified for PSLF. *Id.* at 73.

Plaintiff Elaine Lareina Lai has worked full-time for the Environmental Protection Agency as an environmental scientist since 2004, with the exception of an 8-month period during which she took a leave of absence to perform research in Brazil as a Fulbright Scholar. Doc. 111 Ex. 5 at 25-29. Ms. Lai learned of the PSLF program before it was signed into law. *Id.* at 39. Ms. Lai called Navient shortly after she first learned of the PSLF program, and called every few years after that to ask about it. *Id.* at 40, 42, 44, 50, 55. Ms. Lai was told from the beginning of the PSLF program that her Navient student loans qualified for the program. *Id.* at 40, 45, 50. Ms. Lai specifically recalled a conversation with Navient in early 2014 before she left the country on her leave of absence in which Navient assured Ms. Lai her loans qualified for PSLF. *Id.* at 43, 46-47. Ms. Lai was told that her loans qualified, how long she would be required to continue paying them, how much she would have paid by then, and how much would be forgiven. *Id.* at 66. Ms. Lai kept ongoing contemporaneous electronic notes regarding her conversations with Navient. *Id.* at 8-9, 94 & Doc. 111 Ex. 5 at Ex. 8 at 2. Those notes reflect this conversation. Doc. 111 Ex. 5 at Ex. 8

---

Ex. 4 at 44, 47.

at 2.

Navient's recordings reflect several calls on January 21, 2014, one of which Navient made an exhibit to Ms. Lai's deposition. Doc. 111 Ex. 5 at Ex. 3.  On the first call of that day, Ms. Lai asked about the obtaining a deferment while she was out of the country and whether a deferment would affect her eligibility for PSLF.  *Id.* at 8. Regarding the latter question, Navient referred Ms. Lai to [www.studentloans.gov](www.studentloans.gov). *Id.* Ms. Lai went to that website, but was unable to determine from the website whether her loan was PSLF-eligible. Doc. 111 Ex. 5 at 59. Ms. Lai called back and specifically asked the customer service representative to look up her loan and confirm that it qualified for PSLF. Ex. 31 at 2. The customer service representative indicated that he would transfer Ms. Lai to the department that could answer that question. *Id.* Navient produced the recording of the beginning of that call, on which Ms. Lai asked about her PSLF eligibility, but failed to produce the recording of the remainder of that call after Ms. Lai was transferred to the person she was told would answer it. As explained above, however, Ms. Lai testified, and her contemporaneous notes confirm, that she was told her loans would qualify and provided information on the amount she would pay and the amount that would be forgiven. Ex. 4 at 43, 46-47, 66 & Ex. 8 at 2.

Ms. Lai was first told in August 2015 in a call with Navient that her loans did not qualify. Doc. 111 Ex. 5 at 37, 72.[8] Ms. Lai was not told her loans did not qualify for PSLF any time before 2015. *Id.* at 38.

Although Navient has a form letter with information regarding PSLF, Doc. 111 Ex. 1 at

---

[8]The transcription of the recording of Ms. Lai's August 3, 2015, call with Navient is Exhibit 5 to Ms. Lai's deposition. For purposes of clarity, counsel bring to the Court's attention that the headings in all capitals on the transcribed recordings that are Exhibits 4, 5, and 6 to Ms. Lai's deposition erroneously describe the date of the transcribed recordings as January 21, 2014; the correct dates for each recording are in the description of each audio record in lower case following each heading.

96 & Doc. 111 Ex. 1 at Ex. 31, it does not appear Navient sent that letter to any of the Plaintiffs.

Had such a letter been sent, it would have been reflected in the borrower's correspondence history,

Doc. 111 Ex. 24; no such entries appear in Navient's correspondence history for any of the

Plaintiffs. Doc. 111 Ex. 1 at Ex. 2-5, 7, 9.

### 3. Other Borrowers

Following the filing of this lawsuit, many borrowers who had experienced issues similar to

the issues the named Plaintiffs had contacted Plaintiffs' counsel. Some of those borrowers have

furnished declarations attesting to their experiences, which are composite Exhibit 10 to Plaintiff's

original motion for class certification, Doc. 111 at Ex. 10, and composite Exhibit 28 to this motion.

These borrowers have each attested that they: (1) work full-time for a qualifying organization; (2)

have student loans serviced by Navient; (3) were told by Navient that their loans qualified for

PSLF; and (4) have since learned that their loans are not eligible for PSLF because they are the

wrong loan type or not on an eligible repayment program. Doc. 111 Ex. 10; Ex. 28.

Additionally, Navient has produced in discovery a database of over 1,100 complaints

Navient has received related to the PSLF program. Doc. 111 Ex. 1 at 141-42; Doc. 111 Ex. 1 at

Ex. 26. Navient has now produced the underlying documents related to these complaints.  A

sample of borrower complaints[9] reflecting similar issues to those Plaintiffs have experienced with

Navient is attached as composite Exhibit 32.  Navient's corporate representative acknowledged at

her deposition that at least 50 borrowers have complained that Navient misinformed them that

their loans were eligible for the PSLF program when they were in fact not eligible. Doc. 111 Ex.

---

[9]The complaints Navient produced related to the PSLF program total over 88,000 pages, many of which are not relevant to the issues in this matter.  To avoid burdening the court record, a sample of the complaints reflecting similar issues have been provided.  This is by no means all of the similar complaints.  Should the Court wish to review additional documents, they will be provided at the Court's request.

1 at 175-203.

> **C.      Common evidence regarding Navient and its obligations to borrowers, training, and policies**

Navient, previously known as Sallie Mae,[10] services the student loans of approximately 12 million borrowers.[11] Of those, 6 million borrowers' loans are serviced through contracts with the United States Department of Education (DOE).[12] Navient is also the largest private sector holder of FFEL loans, with over $74.3 billion in FFEL loans in its portfolio.[13]

As a federal student loan servicer, Navient is contractually obligated to answer borrower's questions about their student loans, including questions about the PSLF program. Doc. 111 Ex. 1 at 204. Navient also holds itself out to borrowers as a resource they should consult for advice regarding their student loans, telling borrowers, for example, "We're here to help you successfully navigate your student loans."[14] Likewise, the DOE specifically encourages borrowers to consult their servicers with questions about their student loans and help in determining their best repayment option. For example, the DOE website advises borrowers, "Why pay for help with your federal student loans when your loan servicer will help you for FREE? Contact your servicer to apply for income-driven repayment plans, student loan forgiveness, and more."[15]

---

[10] Navient acknowledges that it is the same organization as the entity once known as Sallie Mae, Inc. Doc. 111 Ex. 1 at 16.
[11] Navient Corp., Form 10-Q, at 47, available at https://www.sec.gov/Archives/edgar/data/1593538/000156459018026503/navi-10q_20180930.htm. Defendant is the wholly-owned subsidiary of Navient Corp. responsible for student loan servicing.
[12] *Id.*
[13] *Id.* at 47-48.
[14] https://www.navient.com/; *see also* https://navient.com/Images/5-Habits-of-Successful-Student-Loan-Borrowers_tcm5-1870.pdf ("As your loan servicer, our goal is to help you stay on the path to successfully paying your student loans …," "Student borrowers who reach out to their servicer when they have questions tend to be more successful in repayment. Navient is here to help."); https://navient.com/new-to-navient ("'We're here to answer your questions, provide you with solutions, and process your payments.")
[15] https://studentaid.ed.gov/sa/repay-loans/understand/plans/income-driven; *See also* https://studentaid.ed.gov/sa/repay-loans/understand/servicers (telling borrowers their "loan servicer will work with you on repayment plans and loan consolidation and will assist you with other tasks related to your federal student loan.")

As discussed above, numerous borrowers have complained Navient made affirmative misrepresentations to them that they were on track to obtain PSLF loan forgiveness. This widespread problem appears to result from systemic issues within Navient. While Navient provides its customer service representatives with information regarding PSLF in an online system, it does not provide its customer service representatives with any scripts related to PSLF. Doc. 111 Ex. 1 at 22, 40, 90, 104 & Doc. 111 Ex. 1 at Ex. 22, Ex. 40. Customer service representatives are thus left to themselves to determine whether a borrower's loan qualify for PSLF. Additionally, the earliest documents relating to PSLF in the online system Navient's customer service representatives rely on are from 2009, Ex. 27 at 14, 19, two years after the PSLF program went into effect.

Further, while Navient provides training to its employees regarding PSLF, that training does not appear to be effective. For example, a recent Navient customer service representative has provided a Declaration describing her experience at Navient. Ex. 29. She explained that Navient's training regarding the PSLF program was "very brief and sometimes confusing with little time to ask questions or gain a full understanding." *Id.* ¶ 5. She was aware of Navient customer service representatives providing incorrect information to borrowers over the phone. *Id.* ¶ 7.

Systemic issues have repeatedly been observed at Navient that have resulted in similar errors.[16] Navient's compensation policies for customer service representatives provide financial incentives for Navient customer service representatives to keep average call times short and satisfy

---

[16]For example, a recently released DOE audit reviewed 2,388 borrower calls involving requests for loan forbearance. *See* Doc. 111 Ex. 11. The DOE reported that "Navient CSRs have varying degrees of skill when navigating calls," noting that a recently trained agent had done "a good job" in responding to a call, but that "a more seasoned agent" was unable to provide the necessary information to assist a disabled borrower seeking to apply for a discharge. *Id.* at 4.

callers on their first call so they do not call back.[17] Doc. 111 Ex. 20; Ex. 27 at 24, 28 & Ex. 4-5; Ex. 29 ¶¶ 8-12. The compensation policies have been in place since before the PSLF program was implemented. Ex. 27 at 30-31. Because of the number and complexity of factors involved in determining whether a borrower satisfied the requirements of the PSLF program, researching and determining whether a borrower's loans qualified for the PSLF program may be time-consuming. Reassuring a borrower that he or she was on track for the PSLF program is simpler and quicker than addressing whether the borrower's loans qualified for PSLF and, if not, walking them through the steps needed to ensure their loans would qualify.[18] For example, a Navient document describing the steps to transfer a loan to the PSLF servicer is 22 pages. *See* Doc. 111 Ex. 22. Additionally, when borrowers consolidate their loans to become eligible for PSLF or submit an Employment Certification Form to determine whether their payments are eligible Navient loses servicing rights for their loans. *See* Doc. 111 Ex. 23; Doc. 111 Ex. 25.

## ARGUMENT

### This Case Should Be Certified as a Class Action Pursuant to Federal Rule of Civil Procedure 23.

Plaintiffs respectfully request that the Court certify this case as a class action, appoint Plaintiffs as class representatives, and appoint Plaintiffs' Counsel as Class Counsel. Plaintiffs seek certification of the following Class and Subclasses:

Class
All individuals in the United States who: (1) have federal student loans that are or were serviced by Navient Solutions LLC; (2) are, or after October 1, 2007, were,

---

[17]The attorneys general of California, Illinois, Pennsylvania, and Washington have each recently brought lawsuits alleging Navient has a pattern of making misrepresentations to borrowers regarding their payment options and steering them into forbearances; these practices are explicitly linked to Navient's incentive compensation plans. Doc. 111 Ex. 12 ¶¶ 31-58; Doc. 111 Ex. 13 ¶¶ 221-298; Doc. 111 Ex. 14 ¶¶ 94-130; Doc. 111 Ex. 15 ¶¶ 5.130-5.166.
[18]*See also* Doc. 111 Ex. 21 ("Across the entire ED Call Center, each 1% increase in FCR results in a reduction in call volume sufficient to reduce 4 FTE's, saving $202,260 in annual costs. Each 1 second of reduced AHT results in a FTE save of 1.4 equating to $63,000 in cost savings.").

employed full-time in public service by a qualifying organization for purposes of the PSLF program; (3) were told by Navient their loans were eligible for the PSLF program; and (4) on or after October 25, 2013, learned they were ineligible for the PSLF program because their federal student loans are not Direct Loans and/or they were not on a payment plan that is eligible for the PSLF program.

Florida Subclass
All individuals who: (1) are residents of Florida; (2) have federal student loans that were serviced by Navient Solutions LLC; (3) are, or after October 1, 2007, were, employed full-time in public service by a qualifying organization for purposes of the PSLF program; (4) were told by Navient their loans were eligible for the PSLF program; and (5) on or after October 25, 2015, learned they were ineligible for the PSLF program because their federal student loans are not Direct Loans and/or they were not on a payment plan that is eligible for the PSLF program.

Colorado Subclass
All individuals who: (1) are residents of Colorado; (2) have federal student loans that were serviced by Navient Solutions LLC; (3) are, or after October 1, 2007, were, employed full-time in public service by a qualifying organization for purposes of the PSLF program; (4) were told by Navient their loans were eligible for the PSLF program; and (5) on or after January 30, 2015, learned they were ineligible for the PSLF program because their federal student loans are not Direct Loans and/or they were not on a payment plan that is eligible for the PSLF program.

The Court is not bound by this definition and has the discretion to modify it as necessary. *See In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004) ("District courts are permitted to limit or modify class definitions to provide the necessary precision."); *see also Herman v. Seaworld Parks & Entm't, Inc.*, 320 F.R.D. 271, 285 (M.D. Fla. 2017) (Scriven, J.), *appeal dismissed*, 2017 WL 5515837 (11th Cir. Aug. 28, 2017) ("To the extent that the class definitions should be refined to more clearly cover the class of individuals affected by [the defendant's] alleged conduct, the Court has discretion to redefine the class to provide the necessary precision").

Both the facts at issue in this action and the legal issues they raise are suited for a class resolution. "It is well-established that class actions are a particularly appropriate and desirable means of redressing common claims for uniform legal violations that affect large numbers of persons in the same way." *Brown v. SCI Funeral Services of Florida, Inc.*, 212 F.R.D. 602, 603 (S.D.

Fla. 2003). That is precisely the situation here. The proposed class and subclasses consist of numerous student loan borrowers who, absent the certification of a class action, are unlikely to have the resources to pursue individual actions against Navient. As the United States Supreme Court has recognized, in such situations reality often dictates that the case proceed as a class action or not at all. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974).

The Court may certify a class action if the four prerequisites of Rule 23(a) and the requirements of at least one subsection of Rule 23(b) are satisfied. Because the Plaintiffs satisfy the requirements of Rule 23(a) and 23(b)(3), this motion should be granted and the Court should certify the proposed Class and Subclasses.

### A.    The proposed class and subclasses satisfy the requirements of Rule 23(a).

Under Rule 23(a), there are four requirements for class certification: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). These four requirements for certification are met here.

### 1.    The class is so numerous that joinder of all members is impracticable.

Rule 23(a)(1)'s numerosity requirement "imposes a 'generally low hurdle' and a plaintiff need not show the precise number of members of the class." *Herman*, 320 F.R.D. at 289. Further, numerosity requires only that joinder be "impracticable." Fed. R. Civ. P. 23(a)(1). The Court may "make assumptions when determining numerosity." *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 696 (S.D. Fla. 2004) (citing *Evans v. U.S. Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir. 1983)). Additionally, federal courts routinely use "common sense" in determining whether numerosity has

been established. *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 229–230 (D.N.J. 2005) ("To meet the numerosity requirement, class representatives must demonstrate only that common sense suggests that it would be difficult or inconvenient to join all class members."); *In re Resource America Sec. Litig.*, 202 F.R.D. 177, 181 (E.D. Pa. 2001) ("In determining whether a proposed class meets the numerosity requirement, 'a court may accept common sense assumptions.'"). "It is not necessary that the precise number of class members be known." *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla. 2000). Although there is no legally established numerical test, generally less than 21 is inadequate and more than 40 is adequate to establish numerosity. *Cox v. Am Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

Plaintiffs estimate that the Class has at least tens of thousands of members. The federal government estimates 1 in 4 workers are employed in public service and more than 32 million borrowers are repaying loans potentially eligible for PSLF.[19] The Government Accountability Office (GAO) recently released a report regarding the PSLF program[20] that shows that hundreds of thousands of public service employees who believed they had fulfilled the requirements or were on track to fulfill the requirements of the PSLF program were mistaken. The GAO reported that as of April 2018, over 19,000 borrowers had submitted loan forgiveness applications, but only 55 borrowers had been approved for loan forgiveness.[21] Also as of April 2018, almost 1.2 million borrowers had requested to have their employment and loans certified, but over 280,000 had been denied; of those, 150,000 were in a non-qualifying loan type.[22] An additional 370,000 borrowers

---

[19] *See* CFPB, "Staying on Track While Giving Back: The Cost of Student Loan Servicing Breakdowns for People Serving Their Communities," at 1, 20 n.34 (June 2017), ("Staying on Track") *available at* https://files.consumerfinance.gov/f/documents/201706_cfpb_PSLF-midyear-report.pdf
[20] *See* USGAO, "Public Service Loan Forgiveness: Education Needs to Provide Better Information for the Loan Servicers and Borrowers" (Sept. 2018), *available at* https://www.gao.gov/assets/700/694304.pdf.
[21] *Id.* at 2.
[22] *Id.* at 9, 11.

had their employment and loans certified as qualifying, but had not made any qualifying payments because, among other reasons, they were not on a qualifying repayment plan.[23]

Moreover, Navient's conduct relating to the PSLF program is a frequent source of complaints by borrowers. A recent report from the Consumer Financial Protection Bureau (CFPB) shows that the CFPB receives more complaints about Navient's servicing of federal student loans than the remainder of the top five federal student loan servicers combined.[24] Of the thousands of complaints about Navient in the one-year period the CFPB reported on, 5% of the complaints about Navient related to the PSLF program.[25]

While the precise number of class members is not known at this time, it is beyond dispute that well more than the minimum number of people fit the class definition. Along with the named Plaintiffs, 26 people have contacted Plaintiffs' counsel and provided declarations attesting that they also were harmed by Navient's affirmative misrepresentations regarding their eligibility for the PSLF program.[26] Doc. 111 Ex. 10; Ex. 28. Navient's records reflect that more than 50 people have complained that Navient misrepresented to them that they qualified for the PSLF program. Doc. 111 Ex. 1 at 175-203.

It is thus known that: (1) of the estimated 32 million borrowers potentially eligible for PSLF, over 500,000 borrowers who believed they were on track for loan forgiveness were mistaken because they were in the wrong loan type or not on a qualifying payment plan, (2) Navient is the country's largest student loan servicer and is the subject of numerous complaints

---

[23]*Id.* at 12.

[24]"Staying on Track," *supra*, at 12.

[25]*Id.* at 13; *see also id.* at 31-32 (describing complaints of the same type at issue here).

[26]The Court has granted Plaintiff's motion to compel Navient to produce records and recordings related to certain borrowers who have come forward with similar experiences, and ordered Navient to produce the requested records by February 15, 2019. Doc. 118. If additional relevant evidence is produced, Plaintiffs will seek leave to supplement this motion.

about its conduct related to the PSLF program, and (3) a large number of people have independently of one another come forward to complain Navient misled them regarding the eligibility of their loans for PSLF. The Court is entitled to make common sense assumptions from these facts to estimate that thousands and likely tens of thousands of members are in the Class.

Likewise, while the precise number of members of the Florida Subclass and Colorado Subclass are not known at this time, common sense dictates that given the large number of estimated class members, numerosity exists as to the Florida Subclass and Colorado Subclass as well. Moreover, along with the three named Plaintiffs who are Florida residents and named Plaintiff who is a Colorado resident, of the complaints Navient acknowledges fit the class definition, Doc. 111 Ex. 1 at 175-203, at least five come from Florida residents and at least two come from Colorado residents. Doc. 111 Ex. 26. Additionally, four of the borrowers who came forward after this case was filed and who have provided declarations are Florida residents. Therefore, the Class and Florida Subclass are so numerous as to make joinder of all members impracticable. The requirement of Rule 23(a)(1) has been met.

### 2. Questions of law and fact are common to Plaintiffs and the class.

Under Rule 23(a)(2), the commonality requirement is satisfied if the named plaintiffs share at least one question of fact or law with the prospective class. The commonality requirement is a "low hurdle," *Williams v. Mohawk Indus., Inc.,* 568 F.3d 1350, 1356 (11th Cir. 2009), that "is satisfied where questions of law refer to standardized conduct by defendants toward members of the proposed class." *CV Reit, Inc. v. Levy,* 144 F.R.D. 690, 696 (S.D. Fla. 1992). Where the class members' factual circumstances are materially identical and the "questions of law raised by the plaintiff are applicable to each [class] member," the commonality requirement is satisfied. *Weiss v. York Hospital,* 745 F.2d 786, 809 (3d Cir. 1984). "Not all factual or legal questions raised in the

15

litigation need to be common, so long as at least one issue is common to all class members." *Fuller*, 197 F.R.D. at 700. A sufficient nexus is established between the class representatives and the class members "if the claim or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory." *Id.*

The questions of law and fact in this case are undeniably common. Indeed, the class definition has been narrowly tailored to ensure that only those who have a closely similar factual situation, both to one another and to the class representatives, are included in the class. The subject of the action is Navient's misrepresentations that borrowers' student loans are eligible for PSLF. Borrowers were damaged by this conduct because they will be required to make additional student loan payments that they would not have been responsible for had Navient not affirmatively misled them that their loans qualified for the PSLF program. Plaintiffs' claims arise out of the same type of conduct and are based on the same legal theories as those of the putative Class members. Plaintiffs assert common law causes of action on behalf of the Class for Breach of Fiduciary Duty,[27] Negligence,[28] Unjust Enrichment/Breach of Implied-in-Law Contract.[29] While only one

[27]"The elements of a claim for a breach of fiduciary duty are: (1) a fiduciary relationship between the plaintiff and defendant, (2) the defendant must have breached his or her fiduciary duty to the plaintiff, and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." 37 C.J.S. Fraud § 15; *see also, e.g., Hepp v. Paul Revere Life Ins. Co.*, 120 F. Supp. 3d 1328, 1341 (M.D. Fla. 2015) ("The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty, (2) breach of that duty, and (3) damages flowing from the breach.").

[28]"The essential elements for an action in negligence are that the defendant was under a duty to protect the plaintiff from injury, that the defendant breached that duty, that the plaintiff suffered actual injury or loss, and that the loss or injury proximately resulted from the defendant's breach of the duty." 65 C.J.S. Negligence § 20. *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1094 (11th Cir. 2017) ("Under Florida law, '[t]o maintain an action for negligence, a plaintiff must establish that the defendant owed a duty, that the defendant breached that duty, and that this breach caused the plaintiff damages.'")(quoting *Fla. Dep't of Corr. v. Abril*, 969 So.2d 201, 204 (Fla. 2007)).

[29]"Three elements must be established in order that a plaintiff may succeed in a claim based on unjust enrichment. These elements are: (1) a benefit conferred on the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value. 26 Williston on Contracts § 68:5 "Restitution independent of liability on contract—Unjust enrichment" (4th ed.). *See also Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, 693 (Fla. 3d DCA 2018) ("The elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable

common question of law or fact is required, there are multiple questions of law and fact common to the proposed Class and Subclasses, including:

- Whether Navient owes a fiduciary duty to the federal student loan borrowers whose loans it services?

- Whether Navient customer service representatives made affirmative misrepresentations to borrowers that their federal student loans qualified for PSLF when in fact they did not?

- Whether making an affirmative misrepresentation to a federal student loan borrower regarding whether the borrower's loan qualified for PSLF breached Navient's fiduciary duty to the borrower?

- Whether Navient has a duty of care to the federal student loan borrowers whose loans it services to ensure it does not provide them with inaccurate information?

- Whether making an affirmative misrepresentation to a federal student loan borrower regarding whether the borrower's loan qualified for PSLF breached Navient's duty of care to the borrower?

- Whether there is a reasonably close connection between Navient making an affirmative misrepresentation to a federal student loan borrower that the borrower's loan qualified for PSLF and the borrower having to make additional student loan payments, such that Navient's affirmative misrepresentations constitute the proximate cause of the borrower's damages?

- Whether being required to make additional student loan payments as a result of Navient's affirmative misrepresentations constitutes actual damages?

- Whether federal student loan borrowers confer a benefit on Navient?

- Whether Navient has actual knowledge of the benefits federal student loan borrowers confer on Navient and voluntarily accepts and retains that benefit?

- Whether it would be inequitable to allow Navient to retain the benefits it has received from a federal student loan borrower when it has made affirmative misrepresentations to the borrower regarding whether the borrower's loans qualify for PSLF?

---

for the defendant to retain the benefit without first paying the value thereof to the plaintiff."). As discussed in Plaintiffs' response to Navient's motion to dismiss, the elements of a claim for breach of contract implied-in-law are analogous to the elements of a claim for unjust enrichment, and these counts are pled in the alternative. Doc. 37 at 18-19.

The Florida Subclass's FCCPA claim[30] likewise presents common issues, including whether Navient made false representations regarding the legal status of a debt, used false or deceptive means to collect a debt, or committed unfair, deceptive, or abusive acts in collecting a debt. The Colorado Subclass's CCPA claim[31] also presents common issues, including whether Navient has engaged in deceptive trade practices.

As required to satisfy the commonality requirement, the above common factual and legal questions listed above are "capable of classwide resolution," meaning that determination of any one of these questions "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The commonality requirement is satisfied.

### 3. Plaintiffs' claims are typical of those presented by the class.

Rule 23(a)(3)'s typicality requirement is satisfied if a class representative is a member of the class, possesses the same interests, and suffers the same injury as the class members. *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). "The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157-158, n. 13 (1982). Typicality does not require identical claims or defenses and factual variations will normally not render a class representative's claims atypical. *See, e.g. Boggs v. Divested*

---

[30]The FCCPA claim is asserted under Fla. Stat. 559.72(9), which prohibits asserting the existence of a legal right that does not exist in collecting a debt. Doc. 19 at 22-24.
[31]The CCPA claim is asserted under Colo. Stat. 6-1-105, which prohibits engaging in deceptive trade practices. Doc. 19 at 27-28.

*Atomic Corp.*, 141 F.R.D. 58, 65 (S.D. Ohio 1991). As long as the claims of the class representativse "are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Here, the claims of the named Plaintiffs and all proposed class members are based on conduct of the same nature. All allege they were harmed by affirmative misrepresentations from Navient that their federal student loans were eligible for the PSLF program when they were not in fact eligible for that program. The claims of Plaintiff and all proposed class and subclass members are based on the same legal theories: that Navient's affirmative misrepresentations were a breach of Navient's fiduciary duty to them, were negligent, and were unjust enrichment and/or a breach of an implied-in-law contract. Accordingly, Rule 23(a)(3)'s typicality requirement is met.

### 4.   **Plaintiffs will fairly and adequately protect the interests of the class.**

The Plaintiffs and their counsel are adequate representatives of the proposed class. The adequacy requirement encompasses two questions: (1) whether the named plaintiffs and counsel "have any conflicts of interest with other class members"; and (2) whether the named plaintiffs and counsel will "prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020. Stated another way, class representatives must not possess interests that are antagonistic to interests of the class and the representatives' counsel must be qualified, experienced, and generally able to conduct the proposed litigation. *CV Reit*, 144 F.R.D. at 698.

The first portion of the adequacy requirement is satisfied here because there is no conflict of interest between the named Plaintiffs and the members of the class. As the Fifth Circuit explained in *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981), "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class," the interests of the class are not antagonistic for representation purposes.

*Id.* at 208. Here, the named Plaintiffs' claims are typical of and held in common with the claims of all members of the Class and Subclasses. The interests of the Plaintiff and the class members are the same: to obtain a determination that Navient breached its fiduciary duty to them, was negligent, and was unjustly enriched and/or breached an implied-in-law contract.

The second part of the adequacy test is also satisfied here. For this prong, courts generally look to the skill and experience of plaintiff's counsel rather than the personal qualifications of the named plaintiffs. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n. 20 (1997); *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982). The Declarations of Plaintiffs' Counsel, attached to the original class certification motion as Exhibits 17 and 18, demonstrate the adequacy of Plaintiffs' Counsel to represent the class. The class will be represented by a team of experienced litigators with a successful track record in consumer class actions and consumer protection litigation. The Kynes Markman & Felman law firm has extensive class action litigation experience. Doc. 111 Ex. 17. Courts in the Middle District have previously found the Kynes, Markman & Felman law firm to be adequate in the context of consumer protection class actions. *Herman*, 320 F.R.D. at 295; *Belcher v. Ocwen Loan Servicing, LLC*, 2018 WL 1701963, at *10 (M.D. Fla. Mar. 9, 2018), *report and recommendation adopted in part*, 2018 WL 1701964 (M.D. Fla. Apr. 2, 2018), *appeal denied*, 2018 WL 3198552 (11th Cir. June 29, 2018); *Lapointe v. Bank of America*, 2016 WL 8729824, at *4 (M.D. Fla. April 26, 2016); *Gaalswijk-Knetzke v. Receivables Mgmt. Servs. Corp.*, 2008 WL 3850657, at *3 (M.D. Fla. Aug. 14, 2008). The members of the Centrone & Shrader law firm also have significant litigation experience, and in particular, have extensive experience in litigating consumer claims, Doc. 111 Ex. 18, and have also been found to be adequate to litigate consumer class actions. *In re Kruzell*, Case No. 8:15-bk-04984-CED, Doc. 50 (Bankr. M.D. Fla. Mar. 7, 2018); *Lapointe*, 2016 WL 8729824, at *4. Additionally, Plaintiffs' Counsel have co-counseled with an

attorney with extensive expertise in the area of student loans. *See* Doc. 111 Ex. 19. Plaintiffs'
Counsel will provide adequate representation.

Further, the Plaintiffs will fairly and adequately protect the interests of the class. Class
representatives are inadequate only if they have "so little knowledge of and involvement in the
class action that [they] would be unable or unwilling to protect the interests of the class against
the possibly competing interests of the attorneys." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52, 61 (2d Cir. 2000). The named Plaintiffs have demonstrated that they understand their
obligations, including that they must act for the benefit of the class and make decisions on behalf
of the class. Doc. 111 Ex. 6-9. They are committed to the prosecution of this action, have
participated in discovery, and appeared for depositions. They have obtained qualified counsel to
prosecute their rights and those of the class. Rule 23(a)(4)'s adequacy of representation
requirement is satisfied.

**B.      The proposed Class and Subclasses satisfy Rule 23(b)(3).**

In addition to satisfying the requirements of Rule 23(a), the proposed Class and Subclasses
must be maintainable under one of the provisions of Rule 23(b). Plaintiffs seek certification
pursuant to Rule 23(b)(3), which requires that: (1) "the questions of law or fact common to class
members predominate over any questions affecting only individual members" ("predominance");
and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating
the controversy" ("superiority"). Both criteria are met in this case.

**1.      Common questions of law and fact predominate.**

While the commonality prong "requires that class members share a single common issue,"
the predominance requirement mandates "that common issues predominate over issues affecting
only individuals." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 247 (D. Del. 2002). "The

21

predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *Bradberry v. John Hancock Mut. Life Ins. Co.*, 217 F.R.D. 408, 414 (W.D. Tenn. 2003). The fact that some class members may be subject to individual defenses does not preclude a finding of predominance. *Kalkstein*, 304 F.R.D. at 122. The predominance test does not require that common issues be dispositive of the action or determinative of the liability issues. Instead, courts should inquire into "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. To satisfy the predominance test, "common issues must constitute a significant part of the individual cases." *Jenkins v. Raymark Indus. Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). "In determining whether the predominance standard is met, courts focus on the issue of liability, and if the liability issue is common to the class, common questions are held to predominate over individual ones." *In re Kirschner Medical Corp. Sec. Litig.*, 139 F.R.D. 74, 80 (D. Md. 1991).

The common issues of law and fact predominate. The claims here focus on Navient's pattern of falsely informing borrowers their loans qualify for PSLF. Plaintiff and the class seek to remedy a common legal grievance arising from those common facts. With respect to all class members, Navient's liability will hinge primarily on the same questions regarding whether its communications violated its obligations to student loan borrowers. The crucial facts that relate to how each consumer was injured are the same. The legal theories applicable to each class member are also largely the same. All the class members share an interest in recovering damages.

While some courts have declined to certify cases involving oral misrepresentations, the Eleventh Circuit held that common issues predominated with respect to a class RICO claim based on misrepresentations to "almost all doctors" by a group of HMOs, stating that "while the defendants engaged in a variety of specific communications with physicians, they all conveyed

22

essentially the same message – that the defendants would honestly pay physicians the amounts to which they were entitled." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1258 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639 (2008). The Eleventh Circuit also reversed an order denying class certification based on a holding that because "the claims involved primarily oral representations," individualized issues would predominate. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 724 (11th Cir. 1987). It held common issues predominated because the "oral representations to the named plaintiffs" did not vary "materially from the misleading information alleged to have been disseminated generally as a result of the defendants' common schemes." *Id.* Similarly, the Ninth Circuit rejected "a 'talismanic rule that a class action may not be maintained where a fraud is consummated principally through oral misrepresentations, unless those representations are all but identical,'" stating that "such a strict standard overlooks the design and intent of Rule 23." *In re First All. Mortg. Co.*, 471 F.3d 977, 991 (9th Cir. 2006) (quoting *In re American Cont'l Corp./Lincoln Savings & Loan Securities Litigation,* 140 F.R.D. 425, 430 (D.Ariz.1992)).[32] Here, Plaintiffs and the members of the class were subject to the same common misrepresentation: that their loans qualified for the PSLF program, when in fact they did not. The issues presented by this uniform set of facts is common, not individualized.

Nor do individualized issues predominate as to Plaintiffs' unjust enrichment claim. While the Eleventh Circuit has held that unjust enrichment claims are generally not suited to class resolution, *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009), this case falls within an exception to that rule. That is, unjust enrichment claims may be decided on a class basis where

---

[32]*See also Roberts v. C.R. England, Inc.*, 318 F.R.D. 457, 520 (D. Utah 2017), *appeal denied,* 2017 WL 3611971 (10th Cir. Mar. 27, 2017) (individualized issues relating to written and oral misrepresentations did not predominate where "key representations forming the basis of potential liability [did] not materially vary").

a defendant's conduct was uniform as to the members of the class. *James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecomm., Inc.*, 275 F.R.D. 638, 647 (M.D. Fla. 2011); *Cty. of Monroe, Florida v. Priceline.com, Inc.*, 265 F.R.D. 659, 671 (S.D. Fla. 2010). Again here, the repeated similar conduct as to the Plaintiffs and the members of the class means common issues related to their unjust enrichment claims predominate.

Questions of law or fact common to the members of the class will thus predominate over questions affecting only individual members.

### 2.    A class action is superior to other methods of adjudication.

Finally, a class action is the superior method by which to adjudicate this controversy. "The superiority requirement asks the courts to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 293 (E.D. Pa. 2003). Rule 23(b)(3) identifies four factors the Court must consider in determining superiority:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

These factors support a finding of superiority here.

As to the first factor, the interests of the class members would not be furthered by their having to undertake individual duplicative actions. To the contrary, class certification is in the best interest of the class and subclasses due, among other things, to the expense of litigating thousands or tens of thousands of individual claims. As the Supreme Court has held, where it is economically infeasible for numerous individuals to bring separate lawsuits, concerns of fairness and efficiency make a class action superior. *Amchem*, 521 U.S. at 617; *Deposit Guar. Nat'l Bank, Jackson, Miss., v.*

*Roper*, 445 U.S. 326, 339 (1980). The damages at stake in this matter are for most class members in the thousands of dollars, *see, e.g.*, Doc. 111 Ex. 10, a range that supports class certification. *See, e.g.*, *Joint Equity Comm. of Inv'rs of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp.*, 281 F.R.D. 422, 436 (C.D. Cal. 2012). Moreover, in evaluating this factor, the Court may take into account that the class includes persons with limited resources. *Roberts*, 318 F.R.D. at 524. The members of the class are employed in public service, and some struggle to even make their student loan payments. Many are likely to have difficulty hiring counsel and devoting the time and costs involved in litigation, relative to the amounts at stake. Finally, the Court should consider that the defendant is a "corporate behemoth[] with a demonstrated willingness and proclivity for drawing out legal proceedings for as long as humanly possible and burying [its] opponents in paperwork and filings," *Dickens v. GC Services Ltd. Pship*, 706 Fed. Appx. 529, 538 (11th Cir. 2017) (quoting *Klay*, 382 F.3d at 1271) – as Navient's conduct in this litigation has proven it to be.

The second factor, the nature and extent of any existing litigation, also weighs in favor of finding superiority. The focus of this inquiry is whether there is so much litigation in progress that certifying a class would be unproductive. *Central Wesleyan Coll. v. W.R. Grace & Co.*, 143 F.R.D. 628, 640 (D.S.C. 1992). Plaintiffs' Counsel are aware of one other class action case asserting claims similar to the claims at issue here, *Hyland et al. v. Navient Corp. et al*, Case No. 1:18-cv-09031 (S.D.N.Y); *see* Doc. 111 Ex. 16, which was recently filed. Plaintiffs do not anticipate that the pendency of *Hyland*, which is behind the schedule of this case, will affect the litigation of this case.

Third, "[c]oncentrating the litigation in this forum will achieve the primary objective of class actions – namely, achieving economies of time, effort, and expense, assuring uniformity and avoiding repetitive actions." *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 318 (S.D. Fla. 2001). Defendant's liability in this case will turn primarily on common issues. It makes sense to resolve

those issues in a single forum rather than requiring numerous courts to resolve the same issues. Further, uniting the class members' claims in a single case will ensure that all class members who are entitled to relief receive it, when the vast majority would otherwise be left uncompensated.

Finally, Plaintiffs anticipate no difficulties in the management of this litigation beyond those encountered in similar class actions involving corporate wrongdoing. As discussed above, Navient has engaged in a pattern of similar behavior with respect to all members of the Class and the issues of law and fact presented by this case are overwhelmingly common. A class action is superior to any other method of resolving this litigation.

### C.  The Class is ascertainable.

The Eleventh Circuit has stated that "a plaintiff class should not be certified unless membership therein is 'adequately defined and clearly ascertainable.'" *Ocwen Loan Servicing, LLC v. Belcher*, 2018 WL 3198552, at *3 (11th Cir. June 29, 2018) (quoting *Carriuolo v. Gen. Motors Co.,* 823 F.3d 977, 984 (11th Cir. 2016)). While there is a split in the circuits regarding whether "a plaintiff must demonstrate an 'administratively feasible' method for determining class membership," the Eleventh Circuit has not yet weighed in on this split, *id.*; the Court need not resolve it here because the proposed Class and Subclasses are ascertainable under any version of this standard. Each of the elements of the proposed class definition is an objective factor capable of being determined.

For example, whether a potential class member had federal student loans serviced by Navient and the state of the class members' residence are a matter of record with both Navient and the DOE. Class members' qualifying employment may be established through the DOE's response to a potential class member's employment certification form; such a response would also establish whether payments the borrower made were ineligible for PSLF because the borrower was in the wrong loan type or payment plan.

The most difficult criterion to establish will be that the borrower received affirmative misrepresentations from Navient; that factor, however, remains administratively feasible to establish. For example, in *Belcher*, the district court approved a process by which potential class members could establish that they received deceptive communications from a mortgage servicer by self-identifying, following which the servicer could review its own records to challenge class members' self-identification. 2018 WL 3198552, at *4. Here, Navient maintains a customer history that memorializes all of Navient's interactions with a borrower, and telephone conversations between customers and Navient customer service representatives are recorded. Ex. 1 at 21, 50-51. Navient is able to retrieve all recordings related to a customer based on that customer's telephone number.  Ex. 27 at 38-39.  Thus, the same process that was held in *Belcher* to be within the district court's discretion, 2018 WL 3198552, at 4, would be feasible here. Accordingly, the Class and Subclasses are ascertainable.

## CONCLUSION

For these reasons, the Plaintiff respectfully requests the Court certify this case as a class action pursuant to Rule 23(b)(3) on behalf of the Class defined above and certify the Florida Subclass and Colorado Subclass as defined above, appoint the Plaintiffs as class representatives and appoint Plaintiffs Daniel, Cottrill, and Padgett as class representatives of the Florida Subclass and appoint Plaintiff Lareina as class representative of the Colorado Subclass, and appoint Plaintiffs' Counsel as counsel to the Class and Subclasses.

Respectfully submitted

/s/ *Katherine Earle Yanes*
Katherine Earle Yanes (FBN 0159727)
kyanes@kmf-law.com
Brandon K. Breslow (FBN 0123755)
bbreslow@kmf-law.com
KYNES, MARKMAN & FELMAN, P.A.
Post Office Box 3396
Tampa, Florida 33601-3396
Telephone:    (813) 229-1118
Facsimile:    (813) 221-6750
*Co-Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of this motion was furnished to all counsel of record listed below by the CM/ECF System, on January 31, 2019:

Ashley Rector
Dayle M. Van Hoose
arector@sessions.legal
dvanhoose@sessions.legal

Gus M. Centrone
Brian L. Shrader
Centrone & Shrader, LLC
gcentrone@centroneshrader.com
bshrader@centroneshrader.com

/s/ *Katherine Earle Yanes*
Katherine Earle Yanes

28