## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

EDWING D. DANIEL,
WILLIAM COTTRILL,
BROOKE PADGETT, and
ELAINE LAREINA LAI,

       Plaintiffs,

v.

                                    Case No. 8:17-cv-2503-T-24JSS

NAVIENT SOLUTIONS, LLC,

       Defendant.

_____/

## O R D E R

**THIS CAUSE** comes before the Count on Defendant Navient Solutions, LLC's Motion for Summary Judgment and Incorporated Memorandum of Law with supporting exhibits. (Docs. 151, S-140). Plaintiffs Edwing D. Daniel, William Cottrill, Brooke Padgett, and Elaine Lareina Lai (collectively, "Plaintiffs") filed a Response in Opposition with supporting exhibits. (Docs. 152, S-115). Defendant filed a Reply. (Doc. 155).

The Court, having carefully considered all of the parties' submissions, finds that Defendant's Motion for Summary Judgment is due to be granted for the reasons that follow.

## I. INTRODUCTION

In this action, Plaintiffs allege that Defendant, a servicer of federally owned or guaranteed student loans, made affirmative misrepresentations to them regarding their eligibility

for the Public Service Loan Forgiveness ("PSLF") program.  Specifically, Plaintiffs allege that

they:  (1) have federal student loans that are or were serviced by Defendant; (2) are, or after

October 1, 2007 were, employed full-time in public service by a qualifying organization for

purposes of the PSLF program; (3) were told by Defendant that their loans were eligible for the

PSLF program; and (4) on or after October 25, 2013, learned they were ineligible for the PSLF

program because their federal student loans are not Direct Loans or they were not on a payment

plan that is eligible for the PSLF program.  (Amended Complaint, Doc. 19, ¶¶ 20, 21, 24, 51,

53–58, 59–65, 66–76, 96–101.)

Based on these allegations, Plaintiffs bring claims against Defendant for breach of

fiduciary duty (Count I); negligence (Count II); unjust enrichment (Count III); and breach of

implied-in-law contract (Count IV).  (Amended Complaint,  ¶¶ 118–37).  In addition, Plaintiffs

assert state-specific consumer law claims against Defendant under the Florida Consumer

Collection Practices Act ("FCCPA"), § 559.72, Fla. Stat. (Count V) and the Colorado Consumer

Protection Act ("CCPA"), Colo. Rev. Stat. 6-1-101, *et seq.* (Count VIII).  (*See id.* at ¶¶ 138–47;

161–67).[1]

## II. BACKGROUND

### A.  The PSLF Program and Defendant's Loan Servicing Operations

The United States Department of Education ("the ED") established the PSLF program in

2007, which provides loan forgiveness to certain borrowers of certain types of loans if they meet

certain requirements.  Pursuant to the Higher Education Act, Pub. L. No. 89-329, 79 Stat. 1219

---

[1]  Count VI of the Amended Complaint, a claim for violation of the Illinois Consumer Fraud and
Deceptive Practices Act and Count VII, a claim  for violation of the District of Columbia Consumer
Protection Procedures Act, were dismissed when Plaintiffs Michael Fanella and James Morgan, on whose
behalf the two counts were raised, were voluntarily dismissed from this case.  (*See* Docs 43, 106).

2

(1965), only Direct Loans originating under the William D. Ford Direct Loan Program, 20 U.S.

C. § 1087a, *et seq.*, are eligible for loan forgiveness under PSLF.  A borrower can obtain a Direct

Loan from the ED or a borrower can consolidate other types of loans under certain federal

programs into a Direct Consolidation Loan.  *See* 34 C.F.R. § 685.220.  To qualify for

consolidation, the underlying loan(s) must:  (1) be in a grace period or in repayment; and (2) not

subject to a judgment or wage garnishment.  34 C.F.R. § 685.220(d).

Under 20 U.S.C. § 1087 *et seq.*, certain borrowers with Direct Loans are eligible to enroll

in the PSLF program and, ultimately, may earn loan forgiveness.  20 U.S.C. § 1087e(m) sets

forth the criteria for loan forgiveness, requiring that the borrower:

> (1) make 120 timely monthly payments on a Direct Loan;
> (2) under a qualifying repayment plan;
> (3) be employed full-time in a "public service job" at the time of forgiveness; and
> (4) had been employed full-time in a public service job during the period in which the borrower made each of the 120 qualifying payments.

The ED oversees the PSLF program through its Federal Student Aid division

("FSA")—the office of the ED responsible for providing financial aid, managing federal student

aid applications and enforcing the rules and regulations related to federal student loans.  (Doc.

151, Ex. A, Declaration of Lisa Stashik ("Stashik Dec."), ¶ 2.)  In 2011, the FSA implemented a

comprehensive program for administering the PSLF program and, since that time, the FSA has

instructed Defendant to refer its borrowers who are interested in the PSLF program to FedLoan

Servicing or the ED for more information.  (*Id.* at ¶ 5–9.)

Defendant sends interested borrowers written correspondence drafted by the FSA, which

advises the borrowers on the eligibility requirements for PSLF.  (*Id.*)  Defendant advises the

borrowers to contact FSA by telephone or to visit their website for more information on the

PSLF program.  (*Id.* at ¶ 10.)  Defendant also includes information about the PSLF program on

its own website, and its customer service agents can access information about the PSLF program

from Defendant's resources when talking to borrowers, including that only Direct Loans qualify

for the PSLF program.  (*Id.* at ¶ 11.)  While Defendant provides its customer service

representatives with information regarding the PSLF program in an online system, it does not

provide its customer service representatives with any scripts for calls related to the PSLF

program.  (Doc. 111, Ex. 1 at 22, 40, 90, 104 & Doc. 111, Ex. 1 at Ex. 22, Ex. 40).

     As a student loan servicer, Defendant does not own Plaintiffs' loans.  (Stashik Dec., ¶ 6.)[2]

Defendant performs loan servicing for the ED, but does not have a contractual relationship with

the borrowers.  (*Id.* at ¶ 8–9).  Defendant collects student loan payments on behalf of the ED,

and is paid servicing fees pursuant to its various servicing agreements.  (*Id.* at ¶ 10–11).

### B. Plaintiffs

### 1. Daniel

     Plaintiff Edwing D. Daniel ("Daniel") currently works for the University of South

Florida, in Tampa, Florida, as the Assistant Dean of Medical School Admissions and has been

employed there since 2013.  (Deposition of Edwing Daniel ("Daniel Dep.") Doc. S-115, Ex. 6 at

29:18–30:1).  He was previously employed at the University of Central Florida for seven years.

---

[2]   In their Response to the Motion for Summary Judgment, Plaintiffs appear to argue that
references to "NAV" in "borrower correspondence history" that was provided with the Declaration of
Andrew Reinhart, a Senior Account Analyst for Defendant, amount to evidence that Defendant is the
owner of Daniel, Cottrill, and Lai's student loans. (*See* Doc. S-140, Exs. 1, 2a, 3, 5).  However,
Plaintiffs' argument is merely based on an assumption, not actual proof of Defendant's ownership of the
loans.  The documents cited by Plaintiffs are hardly self-explanatory, and deciphering them to show that
Defendant is the owner of their loans is a leap this Court is not willing to make.  Thus, this evidence is
insufficient to rebut the Declaration of Lisa Stashik, a Vice President for Defendant, which states that
Defendant is not the owner of Plaintiffs' loans.

(*Id.* at 32:21–25.)  Daniel is the borrower on five federal student loans serviced by Defendant

that are not Direct Loans.  (Declaration of Andrew Reinhart, ("Reinhart Dec."), Doc. 151, Ex B,

¶ 3; Doc. S-140, Ex. 1).

Defendant has recordings of phone calls to or from Daniel dating back to April 30, 2013.

(Doc. 151, Ex. B, ¶ 3; Doc. S-140, Ex. 2).  None of the calls contain any discussion of the PSLF

program or Daniel's eligibility for it.  (*Id.*)  On April 30, 2013, Daniel called Defendant to

discuss the procedure for renewing his income-based repayment terms for the following year.

(Doc. S-140, Ex. 2a).  On August 18, 2013, Daniel called Defendant to discuss the fact that his

account was showing as past due.  (*Id.* at Ex. 2b)  The recorded calls also demonstrate that

Daniel has at times missed payments and requested forbearances.  (*Id.* at Ex. 2c).  Daniel admits

that Defendant never told him that he was enrolled in the PSLF program, that he was on track for

it or that he had the correct types of loans to qualify.  (Daniel Dep. at 85:2–11; 86:11–13).

Daniel also did no independent research or due diligence to make sure he was on track for the

PSLF program, did not visit the ED website for more information, does not recall reviewing any

written correspondence, and did not speak to or consult with anyone else about the PSLF

program.  (*Id.* at 72:1–13; 64:5–10; 83–84).

Nevertheless, Daniel alleges he had one conversation with Defendant regarding the PSLF

program "sometime in or around 2010."  (*Id.* at 57:18–21; 73:2–9; 94:18–23).  He does not recall

the date of the call, the name of the person he spoke with, whether he spoke to a male or female,

or whether the agent had an accent.  (*Id.* at 69:1–6.)   According to Daniel, he phoned to inquire

about "loan forgiveness options for state employees."  (*Id.* at 57:25; 58:1–2).  Daniel asserts that

the agent advised him as to the "parameters" for qualifying, such as making 120 timely

payments, and also stated something to the effect that, if he kept "making payments and was not

late and was communicating with [Defendant] any issues then [he] would be fine." (*Id.* at 58:3–11; 68:11–17.)  He could not recall the agent's specific words, or whether the agent stated that he would be fine, or that, if he met the requirments, he would be fine.  (*Id.* at 68:1–25.)

### 2. Cottrill

Plaintiff William Cottrill ("Cottrill"), a resident of Monroe County, Florida, has worked as a forecaster for the National Weather Service since June 2007.  (Deposition of William Cottrill ("Cottrill Dep."), Doc. S-115, Ex. 3 at 22:25; 23:1–25).  In 2005, before the PSLF program existed, Cottrill consolidated his federal student loans into two loans, which are serviced by Defendant, but are not Direct Loans.  (Reinhart Dec. at ¶ 4 and Ex. 3).  Cottrill enrolled in a 30-year repayment plan.  (Cottrill Dep. at 55:19–23.)

Defendant has two recordings of phone calls related to Cottrill's account dating back to August 9, 2017.  (*Id.* at ¶ 4 and Ex. 4).  Neither of those calls contains any discussion of the PSLF program.  (*Id.* at Ex. 4a).  Cottrill asserts that he had one conversation with Defendant concerning the PSLF program sometime in or around 2010 that he remembers "quite vividly." (Cottrill Dep. at 33:1–4; 36:9–13).  He asserts that during this alleged conversation an agent of Defendant told him three times that he was "set to go" and that all he needed to do was apply for the PSLF program just before his 10-year work anniversary.  (*Id.* at  33:1–17).  Cottrill concedes, however, that the agent told him that he had to make timely payments for 10 years and provided him with a telephone number to use if he had further questions.  (*Id.* at 33:18–25; 34:1–3; 36:17–19.)

Cottrill's correspondence history reflects only three conversations with Defendant in 2010, none of which involved the PSLF program.  (Reinhart Dec. at ¶ 4 and Ex. 3).  For nearly 7 years, between the alleged conversation that he recalls until he completed his application for

PSLF loan forgiveness in 2017, Cottrill did not check to see if he was on track.  (Cottrill Dep. at

39:11–24.)  He did perform his own research on the PSLF program, which included searches on

the internet.  (*Id.* at 31:2–21.)  But, after learning that he could potentially consolidate his loans

into Direct Loans, he chose not to do so.  (*Id.* at 60:21–22.)

### 3.  Padgett

Plaintiff Brooke Padgett ("Padgett") works for the Office of the State Attorney in Tampa,

Florida.  (Deposition of Brooke Padgett ("Padgett Dep."), Doc. S-115, Ex. 4 at 20:13–21:1.)  She

has been employed as an assistant state attorney in Florida since graduating from law school in

2010, first in Marion County, then in Jacksonville, and now in Tampa.  (*Id.* at 20:9–25.)  Before

she consolidated her loans into Direct Loans in October 2017, her federal student loans were a

mix of other types of loans.  (Reinhart Dec. at ¶ 6 and Ex. 7).

Padgett testified that she first spoke with Defendant regarding the PSLF program in

either 2010 or 2011, and at that time, an agent of Defendant allegedly told her a payment of $0

would count towards PSLF program eligibility. (Padgett Dep. at 32:1–6).  Padgett does not

remember any other details from the conversation.  *(Id.)*  Defendant has recordings of telephone

calls related to Padgett's account dating back to February 19, 2013.  (Reinhart Dec. at ¶ 5 and

Ex. 8).  These calls show that on February 19, 2013, an agent of Defendant advised Padgett that

her loans did not qualify for the PSLF program, because she needed Direct Loans, and that she

had to consolidate her current loans.  (*Id.* at Ex. 8a).  In a call on April 27, 2015, Padgett

admitted that she knew she had to consolidate in order to qualify for the PSLF program, and that

an agent of Defendant advised her to visit the website studentloans.gov and provided the correct

number to call.  (*Id.* at Ex. 8b).

On June 29, 2017, three separate agents of Defendant (in three separate calls) again

7

explained to Padgett that only Direct Loans qualify for the PSLF program and she would need to consolidate her loans.  (*Id.* at Ex. 8d–8f).  Padgett called again on June 30, 2017 and received the same information.  (*Id.* at Ex. 8g).  Other calls between Padgett and Defendant included several conversations in which Padgett requested a forbearance.  (*Id.* at Ex. 8c).

Still, Padgett maintains that Defendant misled her about the PSLF program eligibility requirements.  She claims she first spoke to Defendant regarding the PSLF program in either 2010 or 2011, although she does not remember the details of any conversation, other than that an agent of Defendant allegedly told her a payment of $0 would count towards PSLF program eligibility.  (Padgett Dep. at 32:1–6).  Padgett asserts that she discussed the PSLF program with her co-workers and that she did independent research online regarding requirements for the program.  (*Id.* at 31:1–8; 31:23–25).

### 4.  Lai

Plaintiff Elaine Lareina Lai ("Lai"), a resident of Denver, Colorado, has worked as an environmental scientist for the Environmental Protection Agency for the last 14 years. (Deposition of Elaine Lai ("Lai Dep."), S-115, Ex. 5 at 25:23–25; 26:1; 29:18–22).  Her student loans that are serviced by Defendant are not Direct Loans.  (Reinhart Dec. at ¶ 5 and Ex. 5).  Lai claims she recalls a few conversations over a few days sometime in late 2013 or January 2014 in which Defendant confirmed that her loans qualified for the PSLF program.  (Lai Dep. at 46:5–10; 48:6–15).

Defendant has eight recordings of telephone calls related to Lai's account dating back to January 21, 2014.  (*Id.*.at ¶ 5 and Ex. 6).  The transcripts for these calls establish that on January 21, 2014, Defendant's agent informed Lai that she should check online for the PSLF program eligibility requirements and referred her to the ED website.  (*Id.* at Ex. 6a).  Then, when Lai

phoned on January 27, 2014 to inquire as to what type of loans she had, Defendant's agent

informed Lai that she had a Stafford Loan, and never told her that she had a Direct Loan.  (*Id.* at

Ex. 6b).

On August 3, 2015, Lai asked Defendant's agent for the PSLF program whether her loans

were eligible.  (*Id.* at Ex. 6c).  The agent told her that they were not eligible and then advised Lai

to contact the ED to consolidate the loans into a Direct Loan and provided the contact number

for the ED.  (*Id.*).  Lai did not follow this advice and took no action at that time because she

"hop[ed] [Defendant] was wrong."  (Lai Dep. at 55:16–25; 56:1–4).   Lai admitted that even if

she believed that Defendant was right at the time, "there was nothing [she] was going to do about

it" because she "was not interested in starting over ten more years of payments and being locked

into a public service job."  (*Id.* at 73:11–16).

Lai followed up with Defendant more than two and a half years later, on February 13,

2018.  (Reinhart Dec. at ¶ 5 and Ex. 6d).  Lai already knew that her loans did not qualify, but

Defendant's agent again confirmed it.  *(Id.*).  Lai has done independent research on the PSLF

program since its inception, which included internet searches, as well as viewing PSLF-related

web pages of Defendant and the ED.  (Lai Dep. at 51:8–19; 48:20–25; 61:22–25.)  Lai even

printed, reviewed and kept a hard copy of the law describing the PSLF program when it was

enacted.  (*Id.* at 49:4–8; 54:1–13; 59:5–16).

## III.  STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).  The Court must draw all inferences from the evidence in the light most favorable to the

non-movant and resolve all reasonable doubts in that party's favor.  *See Porter v. Ray*, 461 F.3d

1315, 1320 (11th Cir. 2006)(citation omitted).  The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  *See id.* (citation omitted).  When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.  *See id.* (citation omitted).   However, "[c]onclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion.*"* *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)); *see also McKee v. Dir., Fla. Civil Commitment Ctr.*, No. 2:11-cv-579-Ftm-38DNF, 2014 WL 2801043, at *6 (M.D. Fla. June 19, 2014).  If the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required.  *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981).

## IV.  ANALYSIS

Plaintiffs' claims are based only on the pleadings and uncorroborated, self-serving statements.  Plaintiffs fail to provide competent, record evidence that supports their allegations of affirmative misrepresentations made by Defendant and, therefore, no genuine issues of material fact remain to be decided in a trial of this case.

### A.  Fiduciary Duty

Count I of the Amended Complaint raises a claim against Defendant for breach of fiduciary duty.  Defendant asserts that this claim fails because the evidence shows that no such duty was owed to Plaintiffs.  A plaintiff must prove the following three elements to succeed on a

breach of fiduciary duty claim:  (1) the existence of a fiduciary duty; (2) breach of that duty; and

(3) that the breach proximately caused her damages.  *See Gracey v. Eaker*, 837 So. 2d 348, 354

(Fla. 2002)**.**  The Eleventh Circuit has held that "to establish the existence of a fiduciary duty, a

plaintiff must allege some degree of dependency on one side and some degree of undertaking on

the other side to advise, counsel, and protect the weaker party."  *BVS Acquisition Co., LLC v.*

*Brown*, 649 F. App'x 651, 663 (11th Cir. 2016) (quoting *Taylor Woodrow Homes Fla., Inc. v.*

*4/46–A Corp.*, 850 So. 2d 536, 540 (Fla. Dist. Ct. App. 2003)).  "The fact that one party places

trust or confidence in the other does not create a confidential relationship in the absence of some

recognition, acceptance or undertaking of the duties of a fiduciary on the part of the other party."

*Lanz v. Resolution Tr. Corp.*, 764 F. Supp. 176, 179 (S.D. Fla. 1991); *see also Perfumerias*

*Unidas, S.A. v. Coty Prestige Travel Retail & Exp., LLC*, No. 06-CIV-23116, 2007 WL 9709776,

at *10 (S.D. Fla. Aug. 7, 2007) ("Florida law is clear that a fiduciary relationship cannot be

created unilaterally based on the expectations of one party."); *Amoco Oil Co. v. Gomez*, 125 F.

Supp. 2d 492, 510 (S.D. Fla. 2000) (granting summary judgment based on absence of evidence

that defendant recognized, accepted or undertook a fiduciary duty to the plaintiffs); *Saeme v.*

*Levine*, 502 F. App'x 849, 853 (11th Cir. 2012) (affirming summary judgment in favor of

defendant where the plaintiff failed to present record evidence that defendant agreed to advise,

counsel and protect the plaintiff).

   There is no evidence before the Court that Defendant accepted or undertook a fiduciary

duty to advise Plaintiffs with respect to their eligibility for the PSLF program.   Defendant does

not have a contractual relationship with Plaintiffs, and is merely a loan servicer under various

servicing agreements with the ED.  Cottrill acknowledges that Defendant simply provided him

with the ED's telephone number for more information on the PSLF program.  (Cottrill Dep.,

11

Doc. S-140 at 33:18–25; 34:1–3; 36:17–19).   Similarly, Defendant's agents referred both Lai and

Padgett to the ED's website and provided them with the ED's phone number for more

information regarding the PSLF program and their eligibility for it.   (Reinhart Dec. at ¶ 5 and

Exs. 6a, 6c, 8b).   The evidence demonstrates that Defendant never accepted a fiduciary duty to

advise Plaintiffs regarding the PSLF program.

Plaintiffs attempt to create a genuine issue of material fact that they were misled to

believe that their loans qualified for the PSLF program by pointing to unsworn allegations in the

Amended Complaint.   For example, Plaintiffs state:

> **Dr. Daniel asserted in the Complaint**, before he knew what call
> recordings did or did not exist, that he had a conversation with
> [Defendant ] about his PSLF eligibility in November 2011.

(Doc. 152 at pp. 2–3 (emphasis added).

**Mr. Cottrill asserted at the outset of the case**, before he knew which calls [Defendant] would
or would not produce recordings of, that he spoke to [Defendant] about his PSLF eligibility in
approximately 2011.

(Doc. 152 at p. 4).

> **Ms. Padgett asserted from the outset of this case**, before she
> knew which calls [Defendant] had recordings of, that she called
> [Defendant] in approximately December 2010 and was told by
> [Defendant] that her $0 student loan payments qualified for PSLF
> and that she was on track for PSLF.

(Doc. 152 at p. 8 (emphasis added).   Unsworn allegations, however, cannot be considered on a

motion for summary judgment.   *Sequeira v. Steinlauf*, 759 F. App'x 792, 796 (11th Cir. 2018).

Plaintiffs also seek to rebut Defendant's assertion that there was no fiduciary duty by

arguing that Defendant has not produced recordings of every call with Plaintiffs.[3]   Plaintiffs ask

---

[3] It is not clear to the Court whether Plaintiffs are suggesting that Defendant has withheld
recorded calls from them.   However, Defendant's policy for indefinite retention of call recordings began

the Court to make a negative inference that, had such recordings existed and been produced, they would have corroborated Plaintiff's allegations.   Nevertheless, it is Plaintiffs who made claims against Defendant based on their contention that Defendant made specific misrepresentations and, thus, it is Plaintiffs who bear the burden of coming forward with affirmative evidence of any such misrepresentations.  A mere 'scintilla' of evidence supporting Plaintiff's position will not suffice; there must be enough of a showing that the jury could reasonable jury could find for Plaintiff.  *Loren v. Sasser*, 309 F.3d 1296, 1302 (11th Cir. 2012).  "Unsupported self-serving statements of the party opposing summary judgment are insufficient to avoid summary judgment."  *McNeal -Hair v. LaHood*, No. 11-23461-CIV, 2013 WL 1788507, at *8 n.1 (S.D. Fla. Apr. 26, 2013).  Plaintiffs fail to meet their burden.

Furthermore, although Defendant does not possess additional recordings, Defendant produced account notes reflecting its communications with Plaintiffs, and none of those contemporaneous notes support Plaintiffs' claims.  Defendant is, therefore, entitled to the entry of final summary judgment as to Count I of the Amended Complaint.  *See Wells v. Gen. Dynamics Info. Tech,* 571 F. App'x 732, 735 (11th Cir. 2014) ("the burden shifts to the nonmoving party to present affirmative evidence of a genuine issue for trial."); *see also Posada v. James Cello, Inc.,* No. 02-23207-CIV-TURNOFF, 2004 WL 5564190, at *2 (S.D. Fla. Sept. 27, 2004) (granting summary judgment and stating that "[t]he Plaintiff has not met his burden of presenting sufficient affirmative evidence to defeat the defendants' well supported motion for Summary Judgment."); *Nebula Glass Int'l, Inc. v. Reichhold, Inc.*, No. 02-60703-CIV, 2004 WL 4946483, at *3 (S.D. Fla. Apr. 27, 2004) (granting defendant's motion for summary judgment in

---

in December 2012.  Therefore, Defendant does not possess call recordings prior to 2012.

part and stating that "so long as the nonmoving party has had an ample opportunity to conduct

discovery, it must come forward with affirmative evidence to support its claim").

## B. Negligence

Plaintiffs raises a claim against Defendant for negligence in Count II of the Amended

Complaint.  Defendant asserts that this claim suffers from the same deficiencies as Plaintiffs'

claim for breach of fiduciary duty because the evidence shows that it owed no legal duty to

Plaintiffs.  The Court agrees.

Under Florida law, Plaintiffs must prove four elements to prevail on a negligence claim:

(1) Defendant owes a legal duty to the plaintiff: (2) Defendant breached that duty; (3)

defendant's breach legally caused an injury to plaintiff; and (4) damages resulted from the

injury.  *See Clampitt v. D.J. Spencer Sales*, 786 So. 2d 570, 573 (Fla. 2001).  "Whether a duty of

care exists . . . poses a question of law that the court must answer before permitting a negligence

claim to proceed before the trier of fact." *Desai v. Farmer*, No. 5:12-CV-495-OC-34PRL, 2014

WL 5474417, at *12 (M.D. Fla. Oct. 29, 2014) (quoting *Wallace v. Dean*, 3 So. 3d 1035, 1046

(Fla. 2009)) (internal quotations omitted).  The general rule is that a lender does not owe tort

duties to a borrower.  *Hyland v. Navient Corp.*, No. 18cv9031(DLC), 2019 WL 2918238, at *11

(S.D.N.Y July 8, 2018) (citing *Mfrs. Hanover Trust Co. v. Yanakas*, 7 F. 3d 310, 318 (2d Cir.

1993)); *Keys v. Jeep Eagle, Inc. v. Chrysler Corp.*, 897 F. Supp. 1437, 1443 (S.D. Fla. 1995),

*aff'd*, 102 F.3d 554 (11th Cir. 1996).  This rule has been applied to both lenders and loan

servicers.  *Diaz v. U.S. Bank, N.A.*, 14-CIV-20741, 2014 WL 4639431, at *7 (S.D. Fla. Sept. 16,

2014); *Harte v. Ocwen Fin. Corp.*, 13cv5410(MKB), 2014 WL 4677120, at *12 (E.D.N.Y. Sept.

19, 2014).

As with Plaintiffs' claim for breach of fiduciary duty, the evidence before the Court is

that Defendant acted as an arms-length loan servicer with respect to the PSLF program and,

therefore, owed no legally cognizable duty to Plaintiffs that would support a negligence claim.

Daniel and Cottrill never even discussed the PSLF program with Defendant (Reinhart Dec. ¶ 3

and Ex. 2; ¶ 4 and Ex. 4); Cottrill acknowledges that Defendant simply provided him with the

ED's telephone number for more information on the PSLF program (Cottrill Dep., Doc. S-140 at

33:18–25; 34:1–3; 36:17–19); and Defendant's agents referred both Lai and Padgett to the ED's

website and provided them with the ED's phone number for more information regarding the

PSLF program and their eligibility (Reinhart Dec. at ¶ 5 and Exs. 6a, 6c, 8b).  Florida courts

have found that "a duty between a borrower and loan servicer that would give rise to a

negligence action . . . has not been recognized under the law."  *Maxwell v. First United Bank*,

782 So. 2d 931, 934 (Fla. Dist. Ct. App. 2001) (affirming dismissal of borrowers' claims against

creditor because, "[i]n an arms length transaction . . . there is no duty imposed on either party to

act for the benefit or protection of the other party, or to disclose facts that the other party could,

by its own diligence have discovered") (citing *Watkins v. NCNB Nat. Bank of Fla., NA.*, 622 So.

2d 1063, 1065 (Fla. Dist. Ct. App. 1993) (citations omitted)).  As with their breach of fiduciary

duty claim, Plaintiffs fail to present affirmative evidence to support their negligence claim.

Accordingly, Defendant is entitled to the entry of final summary judgment as to Count II of the

Amended Complaint, because it did not owe Plaintiffs a legal duty of care with respect to the

PSLF program.

### C.  Breach of Duty

Defendant argues that even if the Court assumes that a duty was owed to Plaintiffs, their

claims for breach of fiduciary duty and negligence fail because there is no evidence that

Defendant breached any duty.  The Court agrees.

The evidence before the Court is that Daniel has never attempted to discuss the PSLF program with Defendant, as demonstrated by numerous recordings of telephone calls to or from Daniel dating back to April 30, 2013.   (Daniel Dep. at 85:2–11; 86:11–13).   Daniel also admits that Defendant never told him that: (1) he was enrolled in the PSLF program; (2) he was on track for it; or (3) he had the correct types of loans to qualify.   (*Id.*).   Instead, when Daniel spoke with Defendant, the subjects included, among other things:  (1) the procedure for renewing his income-based repayment terms for the following year; (2) the fact that his account was showing as past due; and (3) requests for short forbearances on his loan payments.  (Reinhart Dec. Ex. 2).

Similarly, absent from Defendant's recorded telephone calls related to Cottrill's account are any discussion of the PSLF program or Cottrill's eligibility for the program.  (Reinhart Dec. at ¶ 4 and Exs. 3, 4).   Cottrill also admits that he knew that he could consolidate his loans into Direct Loans, but chose not to do so.  (Cottrill Dep., Doc. S-140 at 60:21–22).

With regard to Lai, several recorded calls demonstrate that Defendant provided her accurate information regarding the PSLF program.  On January 21, 2014, Defendant's agent informed Lai that she should check online for the eligibility and program requirements and referred her to the ED's website.  (Reinhart Dec. Ex. 6a).  Then, on January 27, 2014, Defendant's agent informed Lai that she had Stafford Loans, not Direct Loans.  (*Id.* at Ex. 6b). Subsequently, on August 3, 2015, Lai asked Defendant's agent whether her loans were eligible and the agent told her that they were not, directed Lai to contact the ED to consolidate them into a Direct Loan and provided the contact number for the ED.   (*Id.* at Ex. 6c).  About two and a half years later, on February 13, 2018, Lai contacted Defendant again and the agent once more confirmed that Lai's loans did not qualify for PSLF.  (Reinhart Dec. at ¶ 5 and Ex. 6d).  At her deposition, Lai conceded that she did not act on the information that Defendant provided to her

16

because she "hop[ed] [Defendant] was wrong." (Lai Dep., Doc. S-115 at 55:16–25; 56:1–4). Lai has admitted that, even though her loans did not qualify for PSLF, "there was nothing [she] was going to do about it" because she did not like the idea of having to start making qualifying payments. (*Id.* at 73:11–16).

Padgett's circumstances are no better than the other Plaintiffs. Padgett did not consolidate her loans into PSLF-eligible Direct Loans until October 2017, despite being told by Defendant earlier, on multiple occasions, that consolidation was required for her to be eligible for the PSLF program. (Reinhart Dec. at ¶ 6, Ex. 7). Defendant submitted transcripts from telephone call recordings related to Padgett's account, showing that Defendant provided accurate information to Padgett about her eligibility for the PSLF program on multiple occasions. First, on February 19, 2013, an agent of Defendant told Padgett that her loans did not qualify for the PSLF program because she needed Direct Loans, and she had to consolidate her current loans. (Reinhart Dec. at Ex 8a). Second, on April 27, 2015, Padgett admitted that she *knew* she had to consolidate in order to qualify for the PSLF program, and Defendant's agent directed her to visit the website studentloans.gov and provided the correct number to call. (*Id.* at Ex. 8b). Third, on June 29, 2017, three separate agents of Defendant (in three separate calls) explained to Padgett that only Direct Loans qualify for PSLF and, therefore, she would need to consolidate her loans. (*Id.* at Ex. 8d–8f). Fourth, Padgett called again on June 30, 2017, and received the same information. (*Id.* at Ex. 8g). Given this evidence, there is no genuine issue of material fact that Defendant's representations to Plaintiffs regarding the PSLF program were a breach of duty by Defendant (assuming such a duty existed). As a result, Defendant is entitled to summary judgment on Plaintiffs' claims for breach of fiduciary duty and negligence in Counts I and II of the Amended Complaint..

17

### D.  Unjust Enrichment And Breach of Implied-In-Law Contract

Counts III and IV of the Amended Complaint, respectively, raise claims against Defendant for unjust enrichment and breach of implied-in-law contract.  Defendant asserts that both of these claims fail because there is no evidence that Plaintiffs conferred a benefit on Defendant.  The elements of an unjust enrichment claim and a breach of implied-in-law contract claim are similar.  *Compare Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc.,* 695 So. 2d 383, 386 (Fla.  Dist. Ct. App. 1997), *as modified on clarification* (June 4, 1997), *with Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012).  "The plaintiff must confer a benefit on the defendant, the defendant knew about and accepted or voluntarily accepted and retained the benefit, and the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it."  *Virgilo,* 680 F.3d at 1337; *Commerce P'ship*, 695 So.2d at 386.  And, Florida law requires that a plaintiff confer a *direct* benefit. *Kopel v, Kopel*, 229 So. 3d 812, 818 (Fla. 2017)(unjust enrichment claim); *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331 (Fla. Dist. Ct. App. 2007) (quasi-contract claim) (emphasis added).  An indirect benefit will not sustain either cause of action.  *Kopel*, 229 So. 3d at 818; *Am. Safety*, 959 So. 2d at 331.

Here, Plaintiffs' claims for unjust enrichment and breach of implied-in-law contract arise from the allegation that Plaintiffs conferred a benefit upon Defendant, specifically the principal, interest and fees that Plaintiffs paid and Defendant earned from servicing Plaintiffs' student loans.  (Amended Complaint, Doc. 19, at ¶¶ 130, 135.)  However, Defendant does not own Plaintiffs' loans, it merely services them.  Consequently, Defendant receives no direct "benefit" from the payment of principal, interest, and fees by Plaintiffs.  (*Id.* at ¶ 10.)  Defendant, at most, receives a fee for servicing the loans pursuant to the various servicing agreements with the ED

18

under which it operates.  Because Plaintiffs cannot show that they conferred a benefit, direct or otherwise, on Defendant, their claims for unjust enrichment and breach of implied-in-law contract fail, and Defendant is entitled to the entry of final summary judgment on Counts III and IV of the Amended Complaint.

### E.  The FCCPA

Daniel, Cottrill, and Padgett ("the Florida Plaintiffs") assert a claim for violations of the Florida Consumer Collection Practices Act, under section 559.72(9), Florida Statutes, in Count V of the Amended Complaint.  The FCCPA provides that no person in collecting on consumer debt shall "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist."  *Flores v. I. C. Sys., Inc.*, No. 13-21352-CIV, 2014 WL 1379046, at *6 (S.D. Fla. Apr. 8, 2014) (quoting Fla. Stat. § 559.72(9)).  Defendant argues that Plaintiffs fail to offer any evidence showing that Defendant acted with impermissible purpose to collect on a debt or that Defendant's belief that it was collecting on the Florida Plaintiffs' debt was unreasonable. The Court agrees with Defendant.  The record evidence in this case, as discussed in the Court's analysis of Counts I and II of the Amended Complaint, demonstrates that Defendant acted properly with respect to servicing the Florida Plaintiffs' loans, provided accurate information to the Florida Plaintiffs about the PSLF program and their respective eligibility for it, and that the Florida Plaintiffs themselves failed to take the necessary steps to qualify for the PSLF program. Accordingly, the Florida Plaintiffs' claim for violation of the FCCPA fails, and Defendant is entitled to the entry of final summary judgment on Count V of the Amended Complaint.

### F.  The CCPA

Lai's claim for violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-

1-101, *et seq*. ("the CCPA") in Count VIII of the Amended Complaint, is based on alleged deceptive trade practices on the part of Defendant.  To prevail on this claim, Lai must establish, among other elements, that Defendant committed a deceptive trade practice and that the challenged practice caused her harm.  *Pertile v. Gen. Motors, LLC*, No. 15-CV-0518-WJM-NYW, 2017 WL 4117908, at *10 (D. Colo. Sept. 15, 2017). "To prove a deceptive trade practice, the plaintiff must show that a defendant knowingly makes a false representation." *Id.* (internal quotations omitted).  Defendant argues that without any competent evidence supporting the contention that Defendant made false representations, Lai's claim under the CCPA fails, and summary judgment should be granted.

There is no evidence before the Court that Defendant made false representations to Lai regarding the PSLF program or her eligibility for it.  The record evidence instead shows that Lai made the decision to ignore the information that Defendant provided to her. (Lai Dep., Doc. S-115 at 55:16–25; 56:1–4).  Therefore, Lai's claim for a violation of the CCPA fails, and Defendant is entitled to the entry of final summary judgment on Count VIII of the Amended Complaint.

## IV. CONCLUSION

Because there are no genuine issues of material fact left for trial on any of Plaintiffs' remaining claims in the Amended Complaint, Defendant is entitled to the entry of final summary judgment in this case.

**ACCORDINGLY**, it is **ORDERED AND ADJUDGED**:

Defendant Navient Solutions, LLC's Motion for Summary Judgment (Doc. 151) is **GRANTED**.  The Clerk is directed to enter judgment in favor of Defendant and to close this case.

20

The pretrial conference scheduled for September 4, 2019 is cancelled.

**DONE AND ORDERED** at Tampa, Florida, this 28th day of August, 2019.

SUSAN C. BUCKLEW
United States District Judge

Copies provided to:
All Parties
Counsel of Record

21